1    ADLER LAW FIRM
     Joel D. Adler (SBN 52979)
2    Roger T. Ritter (SBN 56039)
     101 Montgomery Street, Suite 2050
3    San Francisco, CA  94104
     Telephone:    (415) 433-5333
4    Facsimile:     (415) 433-5334
     Email:   adlerlaw@adlerlaw.net
5
     Attorneys for Plaintiff
6    MORRISON & FOERSTER LLP

7

8                         UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

11

12   MORRISON & FOERSTER LLP,              Case No. CV-07-6361 EMC

13              Plaintiff,                 **PLAINTIFF'S OPPOSITION TO
                                           DEFENDANT'S MOTION TO DISMISS
14   v.                                    FOR LACK OF PERSONAL
                                           JURISDICTION, INSUFFICIENT SERVICE
15   MOMENTOUS.CA CORPORATION,             OF PROCESS AND FAILURE TO STATE
                                           A CLAIM**
16              Defendant.
                                           **Date:**       February 20, 2008
17                                         **Time:**       10:30 a.m.
                                           **Judge:**      Hon. Edward M. Chen
18                                         **Location:**   15th Floor, Courtroom C

19

20

21

22

23

24

25

26

27

28

8254                                                       Case No. CV-07-6361 EMC

# TABLE OF CONTENTS

Page No.

I.    STATEMENT OF ISSUES…………………………………………………    1

II.   STATEMENT OF FACTS…………………………………………………    1

III.  ARGUMENT………………………………………………………………    5

      A.    This Court has both specific and general jurisdiction over
            Momentous…………………………………………………………    5

            1.    Specific jurisdiction exists because Momentous
                  purposefully availed itself of the California forum when it
                  hired Morrison to represent CFIT……………………........    5

            2.    Momentous is also generally doing business in
                  California………………………………………………………    7

            3.    The authorities cited by Momentous are plainly
                  distinguishable………………………………………………    8

            4.    Momentous fails to present evidence from Momentous'
                  only percipient witness and signatory, Jennifer
                  Ross-Carrière………………………………………………    11

            5.    Momentous is obligated to pay Morrison's fees………….    12

      B.    Personal service is a proper method of service under Canadian
            law and the Hague Convention………………………………………    13

      C.    Morrison has stated a cause of action for breach of a written
            contract………………………………………………………………..    15

      D.    Defendant's arguments only open the door to additional claims
            for intentional misrepresentation and alter ego liability………….    18

IV.   CONCLUSION……………………………………………………………..    19

1

2

**TABLE OF AUTHORITIES**

3

Cases                                                                                 Page No.

4

*Alderman v. Hamilton*, 205 Cal.App.3d 1033 (1988)…………………………            3

5

*Balcom v.Hiller*, 46 Cal.App.4th 1758, 1764 (1996)……………………………          14

6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)…………………..        8,10

7

*Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004)………………………..        14

8

*Construction Protective Services v. TIG Specialty Ins. Co.*,
 29 Cal.4th 189, 199 (2002)…………………………………………………………            16

9

*Cullinan v. McColgan,* 87 Cal.App. 684, 698 (1927)…………………………            1,12

10

*Daar & Newman v. VRL Int'l*, supra, 129 Cal.App.4th 482, 492 (2005)………         4,5,6

11

12

*Dimensional Communications, Inc. v. Oz Optics Limited*,
 218 F.Supp.2d 653, 656 (2002)……………………………………………………           14,15

13

*Dion LLC v. Infotek Wireless, Inc.*, No. C 07-1431 SBA, 2007
U.S. Dist. LEXIS 83980, at *9…(October 30, 2007)………………………………           17

14

15

*Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301-303
(9th Cir 1986)……………………………………………………………………………           8,9

16

*Fischbarg v. Doucet*, [2007 NY Slip Op; 9 N.Y.3d 375;
2007 N.Y. LEXIS 3718] (December 20, 2007)………………………………………          6

17

18

*Kott v. Superior Court* (*Beachport Entertainment Corporation*),
45 Cal.App.4th 1126 (1996)……………………………………………………………          14

19

20

*Northwest Pipe Co. v. Travelers Indemnity Co. of Conn.*,
No. C-02004189JF, 2003 U.S. Dist. LEXIS 26416, at *10-11
(February 12, 2003)………………………………………………  ………………..          17

21

*Otworth v. Southern Pac. Transp. Co.*, 166 Cal.App.3d 452 (1985)…………         16

22

*Phillips v. Worldwide Internet Solutions*, 2006 WL 1709189
(N.D. Cal. June 20, 2006)………………………………………………………………          11

23

24

*Securimetrics, Inc. v. Hartford Casualty Ins. Co.*, No. C 05-00917 CW,
2005 U.S. Dist. LEXIS 44893  (July 21, 2005)……………………………………          16

25

 *Vorys, Sater, Seymour & Pease v. Ryan* 154 Cal.App.3d 91 (1984)…………         5

26

*Woods v. Graf, N.D.N.Y.* 84 F.Supp.893 (1949)…………………………………          12

27

*Zipper v. Alan M. Nichtern and Barton Limousine Corp.*, 2007
U.S. Dist. LEXIS 24761 at *7-9 (March 30, 2007)…………………………………          15

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

2    <u>Rules</u>

3    California Code of Civil Procedure §413.10 (c)……………………………………  15

4    Federal Rule of Civil Procedure, 4(f)(1)……………………………………………  15

5    Federal Rule of Civil Procedure, 4(h)(2)……………………………………………  14,15

6    Federal Rule of Civil Procedure, Rule 8……..………………………………………  15,16,
                                                                                          17
7

8    Federal Rule of Civil Procedure, 81(c)..……………………………………………  15

9    Federal Rule of Civil Procedure, 84…..………………………………………………  16

10   Federal Rule of Evidence, Rule 301……………………………………………...  12

10   <u>Statutes</u>

11
12   4 Witkin, California Procedure 4th Ed. (1997), Pleading, §§ 388, 389,
     479, 480, 481, pages 486-487, 572-574……………………………………………  16

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# I. STATEMENT OF ISSUES

The key issue to be decided in this motion to dismiss is whether the defendant Momentous.ca Corporation ("Momentous") hired the plaintiff Morrison & Foerster LLP ("Morrison") on November 15, 2005, to represent the Coalition for ICANN Transparency, Inc. ("CFIT"), a company that Momentous was going to form and fund.[1]  The remaining two issues raised in the moving papers are whether service on a Canadian corporation by a Canadian process server complies with the Hague Service Convention and whether a breach of contract cause of action is defective if it does not attach a copy or contain a verbatim recitation of the contract.

# II. STATEMENT OF FACTS

On or about November 10, 2005, Momentous, through its General Counsel and Director of Policy, Jennifer Ross-Carrière, contacted Morrison at its San Francisco office to engage it to initiate litigation and lobbying efforts in an attempt to stop an agreement between two internet giants, ICANN and VeriSign, the effect of which was to restrain or eliminate competition in the expired domain name reselling industry.  This was a lucrative niche that was already occupied by Pool.com, a domain name reseller and Momentous' most profitable subsidiary.[2]  Momentous hired Morrison in San Francisco in an attempt to protect its own financial interests and those of its subsidiary, Pool.com.[3]

Momentous contends that it did not hire Morrison, but rather CFIT did.  However, this is belied both by the express terms of the Engagement to Perform Legal Services ("engagement agreement") and by the fact that CFIT did not even exist at the time Morrison was retained.  Morrison's retainer was paid by Momentous' subsidiary, Pool.com, not by CFIT.

The engagement agreement was addressed to and signed by Momentous and

---

[1] As will be discussed below, "The person liable to compensate an attorney for his services is the one who employs him, not necessarily the one who receives the benefit of the services."  [*Cullinan v. McColgan*, 87 Cal.App. 684, 698 (1927) and discussion at page 13, *infra*.]

[2] *See* March 16, 2006, news article featuring an interview of Rob Hall which is currently posted on Momentous' website.  (Exhibit A to Adler Declaration)

[3] *Ibid*

8254

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   thereafter faxed to Morrison under a Momentous fax cover sheet.  (Taylor Declaration

2   ¶7.)  Momentous implies in its motion that Ms. Ross-Carrière signed the engagement

3   agreement in her capacity as the CEO of CFIT (Motion to Dismiss, 11:12-19) and that it

4   was only addressed to her at Momentous because she did not have a separate CFIT

5   office for herself.  That implication is false and misleading.[4]  Morrison respectfully invites

6   the Court's attention to the signature page of the engagement agreement (Exhibit C to

7   the Declaration of Rob Hall), which shows that Ms. Ross-Carrière signed in her

8   capacities as General Counsel and Director of Policy of Momentous.

9        When Ms. Ross-Carrière signed the engagement agreement on November 15,

10  2005, CFIT had not yet been formed.[5]   It had no legal existence, no supporters, no

11  officers, no physical premises, and no assets.  Ms. Ross-Carrière would not become

12  CEO of CFIT until *twelve days* after she signed the engagement agreement as

13  Momentous' General Counsel and Director of Policy.  Momentous, on the other hand,

14  was an existing client and highly successful company, for which Morrison had been

15  doing trademark work in San Francisco for approximately a year and a half.  (Taylor

16  Declaration, ¶2)

17        Originally, on Friday, November 11, 2005, Momentous requested that Morrison

18  initiate litigation in California with Momentous as plaintiff.  (Taylor Declaration, ¶3)

19  Shortly thereafter, Ms. Ross-Carrière told Morrison that Momentous had specific

20  business, litigation, and tactical concerns about filing suit in the name of Momentous.

21  (Taylor Declaration, ¶5)  On Monday, November 14, 2005, Ms. Taylor and Ms. Ross-

22  Carrière had another telephone conversation in which Ms. Ross-Carrière asked Ms.

23  Taylor to change the name of the plaintiff in the planned litigation from Momentous to

24  CFIT, and to change the name of the client in the engagement agreement as well.

25  Neither Ms. Taylor nor Ms. Ross-Carrière dwelled on the request as it reflected

26  Momentous' tactical considerations rather than its obligations under the engagement,

27  [4] This assertion is also without foundation and speculative.

28  [5] Morrison had no role in the formation of CFIT, which was incorporated on November 16, 2005 and
    appointed officers on November 27, 2005. [Request for Judicial Notice (RJN) Exhibits B and C]

8254                                    - 2 -                          Case No. CV-07-6361 EMC

1  and Ms. Taylor accordingly emailed the revised engagement to Ms. Ross-Carrière who

2  executed it on November 15, 2005. (Taylor Declaration.¶¶6-7)  On that day Pool.com

3  wired the retainer of $20,000 to Morrison. (Declaration of David Westington, ¶5, Exhibit

4  B).

5        Momentous' fundamental contention is that the engagement agreement was

6  between Morrison and CFIT, not Momentous.  A review of its declarations reveals no

7  factual support whatsoever for this contention.  There is, however, key unrebutted

8  evidence before this Court[6] that the agreement was between Momentous and Morrison.

9  When Ms. Ross-Carrière signed the engagement agreement with Morrison she

10  confirmed, in her own handwriting at the signature line, that she was signing it on behalf

11  of Momentous, *expressly in her capacity as its General Counsel and Director of Policy*.

12  Momentous cannot explain away this fact.  Instead, disturbingly, Momentous chooses

13  not even to mention it to this Court.

14        Also unmentioned and unrebutted by Momentous is the fact that CFIT had not

15  even been formed at the time the engagement agreement was executed.  In a case cited

16  by Momentous, *Alderman v. Hamilton,* 205 Cal.App.3d 1033 (1988), the court held at

17  page 1037, "Attorney fee agreements are evaluated at the time of their making."  Thus,

18  the engagement agreement was not and could not have been made with CFIT.

19  Momentous' arguments and inferences cannot support its motion to dismiss.  It is true

20  that Morrison later sent its invoices to CFIT.  It did so at Momentous' direct request after

21  CFIT was formed.  (Taylor Declaration, ¶8)  Under the express terms of the engagement

22  agreement, this did nothing to alter Momentous' responsibility for paying Morrison's bills:

23            "Upon request, we will forward our billing statement to a third party

24            designated by you who is assuming payment responsibility for your

25            legal bills, such as an insurance carrier who holds your liability

26            coverage.  In the event that timely payment is not received from

27            the third party, we will look to you for payment of our legal fees and

28  _____
[6] Exhibit C to the Declaration of Rob Hall

8254                    - 3 -                    Case No. CV-07-6361 EMC

1  costs." [Billing Policies and Procedures, pp. 3-4, unnumbered

2  paragraph entitled BILLING]

3  Momentous was the major, if not exclusive, funder of the CFIT litigation and

4  lobbying efforts.  This fact even appeared to be common knowledge in the domain name

5  industry.[7]  (Taylor Declaration, ¶13; Markham Declaration, ¶6)

6  In an attempt to avoid jurisdiction, Rob Hall, CEO of Momentous, asserts in his

7  declaration, paragraph 2, that "Momentous conducts no business in California."  Perhaps

8  Mr. Hall's use of the present tense is deliberate.  Certainly, Momentous conducted

9  business in California when it originally hired Morrison for its trademark work here, when

10  it hired Morrison to represent CFIT in California, and when it repeatedly promised

11  payment to Morrison.  (Taylor Declaration ¶¶2 and 14)   A single instance of hiring and

12  not paying a law firm has been held sufficient to invoke specific jurisdiction over the

13  client in California.  [*Daar & Newman v. VRL Int'l.*, 129 Cal.App.4th 482, 492 (2005)].

14  There is much more here.

15  Momentous further purposefully availed itself of the California forum when, on

16  January 30, 2006, Mr. Hall *came to California* and demonstrated that he was directing

17  the CFIT litigation.  He and Ms. Ross-Carrière were not in agreement on the pacing of

18  the litigation.  Mr. Hall wanted to maintain the pace of discovery, while Ms. Ross-Carrière

19  wanted to slow the pace of the litigation out of budgeting concerns.  When Morrison

20  attorneys requested guidance on whose instructions to follow (as between Mr. Hall, CEO

21  of Momentous, and Ms. Ross-Carrière, General Counsel of Momentous), Mr. Hall

22  asserted that his instructions were to be followed.  (Taylor Declaration, ¶11; Markham

23  Declaration, ¶5)   While Mr. Hall was never an officer or director of CFIT, he controlled

24  the litigation and the money to pay for it.  Again on February 8, 2006, he instructed

25  Morrison attorneys on how he wanted the litigation conducted. (Taylor Declaration, ¶¶

26  12, 13 and 14)  In addition to these contacts, Momentous communicated frequently with

27

28

[7] Article in "The Register" December 7, 2005, "So who is funding CFIT and why?"  (Exhibit C to the Declaration of Joel D. Adler.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Morrison attorneys in California by e-mail and by telephone.  (Taylor Declaration, ¶12)

Momentous parses, misstates and omits facts to the point of being misleading. Momentous, in its papers, but not in its supporting declarations, alleges that Morrison never made a demand for payment upon it prior to this action.  [Motion to Dismiss 3:19-22.]  This statement is not only unsupported, it is false.  For the year and a half before filing this lawsuit, Morrison made clear to Momentous that it considered Momentous obligated to pay the amounts owed.  Morrison's efforts to collect its unpaid fees and costs *from Momentous* and to communicate with Mr. Hall are reflected in the accompanying Declaration of Peter J. Pfister.  (Pfister Declaration ¶¶ 3-7)

The remaining two legal arguments raised in the moving papers that (1) service on a Canadian corporation by a Canadian process server does not comply with the Hague Convention and, (2) a breach of contract cause of action is defective if it does not contain a verbatim copy of the contract, are simply wrong as matters of law.

### III. ARGUMENT

**A.  This Court has personal jurisdiction over Momentous.**

**1.  Specific jurisdiction exists because Momentous purposefully availed itself of the California forum when it hired Morrison to represent CFIT.**

The fact that Momentous hired Morrison to represent CFIT and that Morrison undertook the representation is sufficient to support specific jurisdiction over Momentous in this case.  The California Court of Appeal in *Daar & Newman v. VRL Int'l.*, *supra,* 129 Cal.App.4th 482, 492 , and *Vorys, Sater, Seymour & Pease v. Ryan*, 154 Cal.App.3d 91 (1984) (hereinafter "*Vorys*"), held that the retention of a law firm alone by an out-of-state entity provided sufficient contacts with the forum state to subject the entity to its jurisdiction in a subsequent claim for breach of the retainer agreement.

*Vorys* presented in some ways the reverse of the instant situation:  In *Vorys*, the First District Court of Appeal held that the California defendants' retention of an Ohio law firm was a sufficient basis for the Ohio courts to exercise jurisdiction over defendants.  In that case the court of appeal made the following observation:

1
2
3
4
5
6

"No California case has considered whether retaining an attorney in another state gives that state personal jurisdiction in subsequent disputes over attorneys' fees.  Most reported cases from other states uphold the exercise of personal jurisdiction.  We reach the same conclusion here." [154 Cal.App.3d at 94-95] (Citations omitted.)[8]

7    Even more directly on point here, in *Daar & Newman* the Second District Court of

8    Appeal held that specific jurisdiction existed in California over a fee dispute between a

9    California law firm and a Cayman Islands corporation, where the corporation had

10   previously retained the law firm to represent it in a tort action that had been brought

11   against it in California.  Jurisdiction existed over the client corporation even though the

12   law firm had brought a successful motion to quash in the earlier case on the ground that

13   the California courts *lacked* personal jurisdiction over the corporation.  [*Daar & Newman*

14   *v. VRL Int'l., supra,* 129 Cal.App.4th at 493]

15   The last paragraph of the court's opinion is instructive and persuasive here:

16
17
18
19
20
21
22

"Appellant is a California law firm which provided valuable legal assistance to respondent.  It would be unjust to allow an out-of-state corporation, even one which does not have adequate contacts with the state for establishment of general jurisdiction, to authorize retention of the California firm and then avoid paying the firm fees it claims due for activities undertaken on the corporation's behalf in California."  [*Ibid.*]

23   Thus Momentous' retention of Morrison to represent CFIT and its breach of the

24   engagement agreement by not paying it is sufficient "purposeful availment" of the

25   California forum, to confer jurisdiction in California over Momentous in this action for

26

---

27
28

[8] That other states remain in accord with finding jurisdiction over out-of-state corporations which have failed to pay for services of lawyers -- on far fewer contacts than exist in this case -- *see, e.g., Fischbarg v. Doucet*, [2007 NY Slip Op 9962; 9 N.Y.3d 375; 2007 N.Y. LEXIS 3718] Copy attached to the RJN Exhibit E

1    Morrison to collect its unpaid fees arising from that retention.  But there are significantly

2    more cause-related contacts by Momentous in this case than in the *Daar* case.

3    Momentous, through Mr. Hall, controlled, funded to the extent they were funded, and

4    directed the California litigation which was subject of the engagement, even coming to

5    California in the process.  Mr. Hall personally participated in lobbying efforts in

6    Washington D.C. with Morrison attorney Jesse W. Markham, Jr.   (*See* p. 4, *supra*;

7    Markham Declaration, ¶¶ 4, 5, 6, 7, and 8)

8         **2.  Momentous is also generally doing business in California.**

9         Because Momentous has sufficient contacts to establish specific jurisdiction, the

10   Court may properly exercise personal jurisdiction in this case.  The available facts also

11   indicate that Momentous would likely be subject to general jurisdiction in California.  For

12   example, Momentous:

13        (1)       engaged Morrison to represented it in trademark matters in the United

14                  States and in California;

15        (2)       holds itself out as doing business in the United States, re-selling

16                  domain names worldwide, including in California, through Pool.com

17                  (indeed, the very purpose of the California litigation was to avoid a

18                  restraint of trade in the United States and California markets in which it

19                  does business); and,

20        (3)       holds itself out on its website as "partners" with VeriSign and ICANN,

21                  both of which have their principal places of business in California.[9]

22        These facts are set forth in the Declarations of Jennifer Taylor and Joel D. Adler.

23   Morrison believes that discovery would reveal additional facts indicating that Momentous'

24   contacts with California are continuous, substantial and systematic.  The fact that

25   Momentous decided to engage a California law firm to bring an action in California to

26   prevent a market abuse that restrained trade in California strongly indicates that

27

28   ─────────────────
     [9] See Adler Declaration, Exhibit D
     8254                                      - 7 -                    Case No. CV-07-6361 EMC

1   jurisdictional discovery would reveal Momentous' substantial contacts with the State

2   sufficient to satisfy general jurisdiction requirements.

3       In summary, a Canadian company projected itself into California, hiring California

4   lawyers and using California courts to protect its business from an alleged restraint of

5   trade in its markets in the United States and California, which conduct also emanated

6   from California.  Its representatives came to California and actively managed the

7   litigation.  To avoid paying its attorneys, it now claims it does no business here.  Having

8   availed itself of the rights and privileges of the forum state, it cannot simply pull up

9   stakes and avoid having the consequences of its actions within California adjudicated in

10  the California courts.  Not surprisingly, the law does not support Momentous' effort here.

11      **3.  The authorities cited by Momentous are plainly distinguishable.**

12      Momentous argues that the California courts have neither general nor specific

13  jurisdiction over it, claiming that "a single contract is insufficient to establish general

14  jurisdiction" and "A defendant's contract with an out-of-state party is not sufficient to

15  establish sufficient minimum contacts in the other party's home forum," citing *Fields v.*

16  *Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986) and *Burger King Corp. v.*

17  *Rudzewicz*, 471 U.S. 462, 478 (1985), respectively.  However this case does not merely

18  involve a single contract.  It involves ongoing, continuous relations between Morrison

19  and Momentous.  First, Momentous hired a California law firm with which it had an

20  existing relationship to file suit.  It was not hailed into California.  It freely chose California

21  as the forum in which to sue its current "partners" ICANN and VeriSign.  It came here

22  purposely and availed itself of the legal system in California by suing ICANN and

23  VeriSign.  Second, this case does not merely involve a contract with an out-of-state

24  party.  It involves the multiple, continuous and intense interactions in California between

25  a client and a law firm associated with ongoing litigation and lobbying efforts.

26      In *Fields,* a dual citizen of both the United States and the United Kingdom sued

27  an English underwriter and an English insurance broker for the alleged breach of an

28  English insurance contract in California.  The Ninth Circuit affirmed the lower court's

1   dismissal for lack of personal jurisdiction, but on grounds that are absent here.  The

2   Court of Appeals set forth the following three-part test to determine whether there was

3   *specific* jurisdiction that comported with due process:

4       "(1) the defendant must have done some act purposely to avail

5            himself of the privilege of conducting activities in the forum;

6       (2)  the claim must arise out of the defendant's forum-related

7            activities; and

8       (3)  the exercise of jurisdiction must be reasonable."  [796 F.2d at

9            302] (citations omitted.)

10       The *Fields* case is wholly inapposite because it was decided on the ground that

11   the exercise of jurisdiction would not be reasonable in that case because the plaintiff

12   was a dual citizen of both the United States and the United Kingdom, where he was a

13   barrister and familiar with the British legal system.  Moreover, the claim involved an

14   English insurance contract and the defendant was English.  "Adjudication of the dispute

15   in a California court would interfere with the capacity of English courts to resolve

16   disputes involving English parties, and thus interfere with British sovereignty."  [796 F.2d

17   at 303]  "England surely has a strong interest in resolving a claim by a British subject

18   against English defendants arising from an English insurance policy." [*Ibid.*]

19       Here, to the contrary, the exercise of jurisdiction is reasonable because plaintiff is

20   a California law firm, "California has a strong interest in providing an effective means of

21   redress for its residents" [796 F.2d at 302], and Canada has no interest in resolving a

22   claim by a California law firm against a Canadian defendant arising from a contract for

23   legal services which was entered into and performed in California.  Canadian

24   sovereignty would not be implicated by the exercise of California jurisdiction in this case.

25       All the factors discussed in *Fields* for allowing personal jurisdiction are present

26   here.  Momentous "purposely availed" itself of the privilege of conducting activities in

27   California by hiring a California law firm to represent CFIT in California litigation.

28   Morrison's fee claim arises out of Momentous' forum-related activities.  Thus, the

1    exercise of jurisdiction here is reasonable.

2         Contrary to Momentous' suggestion, the Supreme Court in *Burger King* found

3    there was jurisdiction due to the same factors that support jurisdiction here: multiple

4    interactions flowing from the contract.  The Court restated the "purposeful availment"

5    requirement to avoid the exercise of jurisdiction based upon "'random,' fortuitous,' or

6    'attenuated' contacts" with the forum state. [471 U.S. at 476] (Citations omitted).

7    Although it held that "an individual's contract with an out-of-state party *alone*" could not

8    establish sufficient minimum contacts [471 U.S. at 478] (italics in original), it went on to

9    discuss the factors flowing from the existence of a contract, *i.e.*, "prior business

10   negotiations with future consequences which themselves are the real object of the

11   business transaction." [471 U.S. at 479]  (citation omitted)  It also noted that although the

12   Michigan defendant had almost no physical ties to Florida, the "franchise dispute grew

13   directly out of a contract which had a substantial connection with that State."  [*Ibid.*]

14   (citation omitted)

15        Applying the factors the Court set forth in *Burger King* here, Momentous

16   "purposefully availed" itself of the California forum by hiring Morrison (which represented

17   Momentous in other matters at that time) to represent CFIT in California litigation.  The

18   "real object of the business transaction" was to promote Momentous' interests by

19   seeking to prevent a restraint of trade in the United States and California.  Accordingly,

20   the fee dispute between Momentous and Morrison grows directly out of a contract for

21   legal services which has a substantial connection with California.

22        The statements Mr. Hall makes in his declaration that CFIT is solely responsible

23   for paying Morrison's bill are belied by the facts that Ms. Ross-Carrière signed the

24   engagement agreement as the General Counsel of Momentous, that Ms. Ross-Carriére

25   told Morrison that Momentous would be wiring money to CFIT for the purpose of paying

26   Morrison's invoices, that Mr. Hall directed Morrison to take instruction from him alone,

27   and that Mr. Hall had Momentous' CFO join him on telephone calls where Mr. Hall was

28   making decisions as to what work should be done on the litigation and what the budget

1   should be.  [Taylor Declaration, ¶¶ 11, 12, 13 and 14]  If Momentous had no connection

2   with the lawsuit and Mr. Hall had no connection with CFIT, by why would he tell Morrison

3   to follow his instructions?  Momentous was the "major funder" of CFIT, with a direct

4   stake in the litigation. [Email from Jennifer Ross-Carrière to Jesse W. Markham, Jr.,

5   dated February 8, 2006, Exhibit A to Markham Declaration]

6       Finally, Momentous cites cases for the proposition that "Great care and reserve

7   must be exercised when exercising jurisdiction over a defendant from a foreign nation

8   such as Momentous." [Motion to Dismiss, page 8, lines 19-20]  Morrison does not

9   dispute that statement as a general rule, but the exercise of "great care and reserve"

10  does not mean that California courts can *never* maintain personal jurisdiction over

11  foreign defendants who voluntarily and purposefully avail themselves of the benefits of

12  the California forum and thereafter seek to avoid the obligations of that availment.  Their

13  foreign status does not confer immunity upon them or allow them to breach their

14  contracts with impunity, free from the exercise of the jurisdiction of the California courts.[8]

15      **4.  Momentous fails to present evidence from Momentous' only percipient
16          witness and signatory, Jennifer Ross-Carrière.**

17      The motion is supported by Mr. Hall's declaration but not by that of Ms. Ross-

18  Carrière.  However, Mr. Hall was not a signatory to the engagement agreement and

19  does not allege his personal participation or any other foundational basis of personal

20  knowledge for his assertion that "Momentous never agreed to pay Morrison & Foerster's

21  fees in connection with this litigation."  (Hall Declaration page 2 lines 18-19.)  The actual

22  signatory, Ms. Ross-Carrière, is presently practicing law in Ottawa, Ontario, Canada.

23  (Adler Declaration, ¶2)  Significantly, Momentous does not attach a declaration from Ms.

24  Ross-Carrière, who is the Momentous percipient witness to the formation of the

25  contractual relationship and the most logical person to testify.  The absence of the

26  _____

    [8] In *Phillips v. v. Worldwide Internet Solutions*, 2006 WL 1709189 (N.D. Cal. June 20, 2006), cited by

27  Momentous, the defendant was a website hosting service and the alleged tortious conduct consisted of
    sending "spam" e-mails to California.  There was no contract between the Canadian defendant and the

28  California plaintiff that could have given rise to "purposeful availment" of the California forum in that case,
    so it is not on point here.

1   support of Momentous' only percipient witness and former general counsel is legally

2   significant.  The production of weak evidence (or as in this case foundationless

3   conclusion and opinion of Mr. Hall) when stronger evidence is available can lead only to

4   the conclusion that the stronger evidence would have been adverse. [*Woods v. Graf,*

5   N.D.N.Y. (1949) 84 F.Supp. 893; see also Fed. R. Evid., Rule 301, the "adverse

6   inference rule"]

7            **5.  Momentous is obligated to pay Morrison's fees.**

8            Momentous argues that the engagement agreement and other documents reflect

9   that CFIT and not Momentous was the contracting party.  However, those documents

10   only reflect that CFIT was to be a client, which is not in dispute.  They do not establish

11   that Momentous did not agree to pay Morrison's bills on CFIT's behalf.  The engagement

12   agreement was addressed to Ms. Ross-Carrière at Momentous.ca Corporation and

13   begins "This is to set forth the basic terms upon which **you** have engaged our firm to

14   represent the Coalition for ICANN transparency ("CFIT") (emphasis added).  As noted

15   above, Ms. Ross-Carrière in signing the engagement agreement hand-wrote that she

16   was doing so in her capacity as Momentous' General Counsel and Director of Policy.

17   (Taylor Declaration ¶7).

18            The law in California going back at least to 1927 is that the party responsible for

19   paying an attorney's fees is the party who retained the attorney, who is not necessarily

20   the client on whose behalf the attorney has been retained. [*Cullinan v. McColgan,* 87

21   Cal.App. 684, 698 (1927):

22            "The person liable to compensate an attorney for his services is

23                 the one who employs him, not necessarily the one who receives

24                 the benefit of the services." (citation omitted.)

25            Otherwise, no contract to pay the legal fees of another, *e.g.*, a parent who retains

26   an attorney on behalf of a minor child, would ever be enforceable.  In this case

27   Momentous hired Morrison to represent CFIT, so Momentous is responsible for paying

28

8254                              - 12 -                    Case No. CV-07-6361 EMC

1    the bill.

2          Finally, in its memorandum in support of its motion to dismiss, Momentous

3    surprisingly argues to the Court that Morrison's decision to pursue Momentous was an

4    afterthought -- that Morrison never considered holding Momentous responsible for the

5    outstanding bills until this lawsuit was filed:  "Morrison & Foerster cannot ignore the fact

6    that it freely agreed to look to CFIT for payment, and in fact did so *until the filing of this*

7    *lawsuit*."  (Emphasis added.)  That is false.  (Taylor Declaration ¶14; Pfister Declaration

8    ¶¶ 2-12)  Morrison always considered Momentous responsible.  Moreover, as reflected

9    in the Markham, Taylor and Pfister Declarations, Morrison explicitly communicated to

10   Momentous for a year and a half its position that Momentous was responsible.  *See,*

11   *e.g.,* letter from Pfister to Opdam dated October 10, 2006, attached to the Pfister

12   Declaration, Exhibit B.

13         In light of extensive 2006 correspondence specifically addressing Morrison's

14   position that Momentous has responsibility for payment, it is disturbing that Momentous

15   has the temerity to tell this Court that Morrison did not even look to Momentous until the

16   filing of this lawsuit in November of 2007.[9]

17   **B.  Personal service is a proper method of service under Canadian law and
18       the Hague Convention.**

19         Momentous does not dispute it was served with the summons and complaint by

20   serving its authorized agent at his office in Ottawa [Hall Declaration, ¶14], but it argues,

21   without citing any authority, that personal service is not an allowable method of service

22   under the Hague Service Convention ("Convention").  That contention is wrong.  Personal

23   service is permitted under Article 10 (c) of the Convention, which provides as follows:

24              "Provided the State of destination does not object, the

25              present Convention shall not interfere with (c) the freedom of

26              any person interested in a judicial proceeding to effect

27   _____

28   [9] The fact that this argument appears in the brief but nowhere in Momentous' declarations only adds to the
     concern.

     8254                              - 13 -                    Case No. CV-07-6361 EMC

1    service of judicial documents directly through the judicial

2    officers, officials *or other competent persons of the State of*

3    *destination*."   (italics supplied)

4    In *Balcom v. Hiller*, 46 Cal.App.4th 1758, 1764 (1996), the court of appeal held

5    that the above provision "contemplates the use of process servers" and rejected the

6    identical argument that Momentous is making here.  In that case a resident of the United

7    Kingdom was personally served by a process server, just as Momentous was served in

8    this case.  Accordingly, the Convention allows service by a registered process server,

9    provided the "State of destination does not object." [10]

10    Momentous does not contend Canada objects to such service and in fact it does

11    not.  In *Dimensional Communications, Inc. v. Oz Optics Limited,* 218 F.Supp.2d 653 (D.

12    N.J., 2002), the district court held a Canadian process server was competent to effect

13    service of process upon a Canadian corporation under the Convention and that Canada

14    did not object to that method of service. [218 F.Supp.2d at 656]  In addition, the court in

15    that case held that the precise method of service used here - a process server leaving

16    copies of the summons and complaint with the company's authorized agent at his

17    business address - also complied with the law of Ontario. [*Ibid*.][11]

18    Momentous cites Fed.R.Civ. P. 4(h) (2) for the proposition that personal service of

19    summons and complaint on a foreign corporation is not an allowable method of service

20    under the federal rules.  However, that rule is inapplicable here for two reasons.

21

22    [10]  The two cases that Momentous cites in support of the proposition that service is governed by the Hague Convention are not relevant to the analysis because Morrison does not dispute that the Hague Convention governs service in this case.  The facts in those cases are also distinguishable because neither involved

23    personal service.  In *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004), the court of appeals held that a plaintiff could not serve an English company by ordinary international first class mail. [383 F.3d 808-809]

24    In *Kott v. Superior Court (Beachport Entertainment Corporation),* 45 Cal.App. 4th 1126 (1996), the court of appeal granted a writ of mandate and directed the superior court to quash service of summons and

25    complaint on a Canadian citizen where service had been effected by publication.  The court of appeal held that the plaintiff had "failed to exercise reasonable diligence in attempting to locate [the defendant] prior to

26    seeking court permission to serve him by publication." [45 Cal.App.4th at 1139]  It also noted that "Personal service remains the method of choice under the statutes and the constitution." [*Id.* at 1137]

27    [11] The Proof of Service is attached as Exhibit D to the Request for Judicial Notice.  Also, not only may this Court take judicial notice that Ottawa is located in the Province of Ontario, but Mr. Hall so states in his

28    Declaration. [Hall Declaration, ¶2, page 1, line 23].

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    First, this case was brought in California state court and service was

2    accomplished before the case was removed to this Court, so the Federal Rules do not

3    apply to determine the correctness of the method of service.  Fed. R. Civ. P. 81 (c)

4    ("These rules apply to civil actions removed to the United States district courts from the

5    state courts and govern procedure *after* removal.") (emphasis added.)  There is no

6    question that service in compliance with the Hague Convention was adequate under

7    California's rules for service of process on defendants outside the United States.  [Cal.

8    Code Civ. P. [sec.] 413.10(c).]

9    Second, even if the Federal Rules governed service, they expressly provide for

10    service by the Hague Convention, of which Canada is a member.  *See* Fed. R. Civ. P.

11    4(f) (1); Fed. R. Civ. P. 4(h) (2).  As explained above, the Hague Convention and local

12    Canadian law allow for personal service in Canada.  [*See* Article 10 (c) of the

13    Convention; *Dimensional Communications,* 218 F.Supp.2d at 656.]  The restrictions in

14    Fed. R. Civ. P. 4(h) (2) are inapplicable when personal service complies with the Hague

15    Convention.  [*See Zipper v. Alan M. Nichtern and Barton Limousine Corp.*, 2007 U.S.

16    Dist. LEXIS 24761 at *7-9 (E.D.N.Y. March 30, 2007 (denying motion to dismiss for

17    insufficient service to extent that the motion relied on personal service on officer of

18    defendant Canadian corporation).]

19    Accordingly, the service of process in this case was valid under both Canadian

20    law and the Hague Service Convention.

21    **C.  Morrison has stated a cause of action for breach of a written contract.**

22    Momentous' last argument is that the complaint fails to state a cause of action for

23    breach of contract.  Relying on *Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App. 3d

24    452 (1985), Momentous contends that the complaint should be dismissed because

25    Morrison failed to comply with California pleading standards by either attaching a copy of

26    the contract or reciting its terms verbatim.  Momentous, however, applies an incorrect

27    legal standard.  In an action removed to federal court, the sufficiency of a complaint is

28    governed by Rule 8 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 81(c)

1  (Federal Rules of Civil Procedure apply in removed actions).  To state a claim for breach

2  of contract, Rule 8(a)(2) requires only "a short and plain statement of the claim showing

3  that the pleader is entitled to relief."  There is no requirement in federal court that a

4  plaintiff either attach a contract or recite its terms verbatim.[14]

5      The court in *Securimetrics, Inc. v. Hartford Casualty Ins. Co.*, No. C 05-00917

6  CW, 2005 U.S. Dist. LEXIS 44893 (N.D. Cal. July 21, 2005), considered and rejected the

7  very argument Momentous makes here.  The plaintiff in that case brought a claim for

8  breach of contract and the defendant, relying on *Otworth*, moved to dismiss on the

9  ground that the plaintiff failed to attach the contract or to set forth its terms verbatim.

10  The court held that Rule 8, not *Otworth*, provides the relevant standard:

11

12      Defendant cites California State law … for the proposition that a

13  Plaintiff pleading breach of contract must either attach a copy of the

    contract to the complaint or set forth the relevant contract terms

14      verbatim.  However, pleading is governed by *Rule 8 of the Federal*

15  *Rules of Civil Procedure*, not by State procedural requirements.

16      Under *Federal Rule of Civil Procedure 8(a)*, a "short and plain

17  statement of the claim" suffices.  The forms appended to the Federal

18  Rules of Civil Procedure note that "plaintiff may set forth the contract

19  verbatim in the complaint or plead it, as indicated, by exhibit, or plead

20  it according to its legal effect."  These forms are declared to be

21  sufficient by *Federal Rule of Civil Procedure 84*. *Id.* at *5-6 (citations

22  omitted).

23

24      The court then denied the motion to dismiss on the ground that the complaint,

25

26  [14] Nor is there any such requirement in California courts.  The California Supreme Court has held that "In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its

27  precise language." [*Construction Protective Services v. TIG Specialty Ins. Co.*, 29 Cal.4th 189, 199 (2002), citing 4 Witkin, California Procedure 4th Ed. (1997), Pleading, §§ 388, 389, 479, 480, 481, pages 486-487,

28  572-574]   In fact, it is necessary only to allege the essential terms of the contract and of the breach. [4 Witkin, California Procedure 4th Ed. (1997), Pleading, §481, page 573]

8254

- 16 -

Case No. CV-07-6361 EMC

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   which concisely explained the nature of the contract and the alleged breach, adequately

2   plead the "legal effect" of the contract and the facts sufficient to "enable Defendant to

3   understand and respond to its claims." *Id.* at *6; *see also Dion LLC v. Infotek Wireless,*

4   *Inc.*, No. C 07-1431 SBA, 2007 U.S. Dist. LEXIS 83980, at *9 (N.D. Cal. Oct. 30, 2007)

5   (denying motion to dismiss breach of contract claim because, under Rule 8(a) standard,

6   the pleading need only provide "the bare outlines of [a] claim" in order to place

7   defendants on notice of claim for breach of contract) (citation omitted)).

8           Morrison's complaint easily satisfies Rule 8's liberal pleading standard and puts

9   Momentous on notice of the claim asserted against it such that Momentous can respond.

10  The complaint states that Momentous engaged Morrison at agreed-upon rates to

11  perform certain specified legal services, that Momentous agreed to pay for the

12  representation, that Morrison fully performed all obligations under the contract, and that

13  Momentous breached the contract by failing to make payments in the amount of

14  $624,588.68.  Momentous cannot credibly argue that these allegations fail to put it on

15  notice of the nature of the breach of contract claim.  Rule 8 requires nothing more.  *See*

16  *Northwest Pipe Co. v. Travelers Indemnity Co. of Conn.*, No. C-02004189JF, 2003 U.S.

17  Dist. LEXIS 26416, at *10-11 (N.D. Cal. Feb. 12, 2003) (motion to dismiss breach of

18  contract claim denied where complaint alleged basic elements of claim, including

19  existence of contract, performance by plaintiff, breach, and damages).

20          Momentous also asks the Court to resolve factual issues regarding the meaning

21  of the engagement letter.  Momentous cites a list of facts that it contends shows that

22  Momentous did not enter into a contract with Morrison.  (Motion to Dismiss at 11-12.)

23  Morrison is confident that Momentous' factual assertions lack any merit (as

24  demonstrated by the declarations submitted herewith), but the relevant point here is that

25  the Court cannot resolve factual disputes on a motion to dismiss, which tests only the

26  legal sufficiency of the claims.  Momentous' motion to dismiss for failure to state a claim

27  should be denied because the complaint's allegations meet Rule 8's pleading standard.

28  /  /  /

8254

- 17 -

Case No. CV-07-6361 EMC

**D. Defendant's arguments only open the door to additional claims for intentional misrepresentation and alter ego liability.**

Finally, and ironically, if we accept Mr. Hall's and Momentous' current, albeit unsupportable, position that it *never intended* to honor Momentous' agreement to pay, CFIT was never adequately capitalized, though still controlled by Momentous.  Thus, Momentous' claim that it was never obligated to pay, despite the engagement agreement and Momentous' representations to the contrary at the outset, would mean that 1) Momentous would be potentially liable as an alter ego of CFIT and, 2) Momentous would also be liable for intentional misrepresentation to Morrison.

If one were to accept Momentous' current denial of the existence of an agreement to pay Morrison, it would be necessary and appropriate to pierce the corporate veil to remedy a fraud and avoid injustice by imposing alter ego liability on Momentous, the company responsible for creating CFIT and for directing Morrison's work.  Principles of alter ego liability have developed precisely to avoid the potential injustice here.

For all the reasons provided above, we do not believe a finding of alter ego liability is necessary to defeat the instant motion.  However, if the Court is not convinced that the instant motion should be denied, Morrison respectfully requests leave to take discovery on the alter ego and fraud issues raised by Momentous' arguments, as well as discovery on general jurisdictional issues, prior to a final ruling on Momentous' motion to dismiss, as well as leave to supplement its papers in this proceeding and amend its pleadings in this case.

**IV. CONCLUSION**

Morrison respectfully submits that Momentous' motion is without merit and should be denied.

Dated: January 29, 2008                         ADLER LAW FIRM


                                                /s/ Joel D. Adler
                                                Attorney for Plaintiff
                                                MORRISON & FOERSTER LLP

8254                          - 18 -                    Case No. CV-07-6361 EMC