| | |
|---|---|
| 1 | ADLER LAW FIRM |
| | Joel D. Adler (SBN 52979) |
| 2 | Roger T. Ritter (SBN 56039) |
| | 101 Montgomery Street, Suite 2050 |
| 3 | San Francisco, CA  94104 |
| | Telephone:   (415) 433-5333 |
| 4 | Facsimile:    (415) 433-5334 |
| | Email:  adlerlaw@adlerlaw.net |
| 5 | |
| | Attorneys for Plaintiff |
| 6 | MORRISON & FOERSTER LLP |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| MORRISON & FOERSTER LLP, | | Case No. CV-07-6361 EMC |
| Plaintiff, | | **DECLARATION OF JENNIFER LEE TAYLOR IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, INSUFFICIENT SERVICE OF PROCESS AND FAILURE TO STATE A CLAIM** |
| v. | | |
| MOMENTOUS.CA CORPORATION, | | |
| Defendant. | | |
| | | **Date:** February 20, 2008 |
| | | **Time:**  10:30 a.m. |
| | | **Judge:**  Hon. Edward M. Chen |
| | | **Location:**  15th Floor, Courtroom C |

**I, JENNIFER LEE TAYLOR, declare:**

1.   I am an attorney at law, duly admitted to practice before all courts of the State of California and before this Court, and I am a partner at MORRISON & FOERSTER LLP ("Morrison"), plaintiff herein.  I am a percipient witness to the facts set forth herein, as they are within my own personal knowledge, and if called to testify thereto, I could and would competently do so.

/ / /

8254  1  Case No. CV-07-6361 EMC

DECLARATION OF JENNIFER TAYLOR IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

2. On or about November 10, 2005, Momentous.ca Corporation ("Momentous'), defendant herein, through its General Counsel and Director of Policy, Jennifer Ross-Carrière, contacted me at my office in San Francisco to engage Morrison to initiate litigation and lobbying efforts in an attempt to stop an agreement between VeriSign, Inc. ("VeriSign"), and the Internet Corporation for Assigned Names and Numbers ("ICANN"), the effect of which was to restrain or eliminate competition in the expired domain name reselling industry. Momentous was an existing client of Morrison, for whom I had been doing trademark work for approximately a year and a half. I checked to make sure Morrison had no conflicts of interest in representing Momentous in a suit against ICANN and VeriSign.

3. On Friday, November 11, 2005, I had a telephone conference call with both Ms. Ross-Carrière and with Momentous' Canadian outside counsel, Glenn Bloom, Esq., of Osler, Hoskin & Harcourt LLP. During that call Ms. Ross-Carrière requested that Morrison initiate litigation for Momentous in California against ICANN and VeriSign. Although Momentous could have sued ICANN and VeriSign in any state, because their alleged misconduct was nationwide, Momentous retained Morrison's San Francisco office and elected the California forum, in large part because both ICANN and VeriSign have their principal places of business in California.

4. Ms. Ross-Carrière and I discussed the details of the representation. I told her that Morrison would require an initial retainer payment of $20,000. That amount was relatively low, given the nature of the projected litigation, but Momentous was an existing client and I understood that Momentous was a highly successful company, so I had no concerns that it would be able to pay our fees. Ms. Ross-Carrière also told me that Momentous was setting up a separate organization, which would be called the "Coalition for ICANN Transparency" ("CFIT"), to support its activities against ICANN and VeriSign. Later that day I directed my secretary to email Mr. Bloom an engagement agreement for his review and forwarding to Momentous. That agreement was addressed to Ms. Ross-Carrière, it named Momentous as the client, and it attached Morrison's billing policies.

1  A copy of that agreement, with its transmittal email and its attachments, is attached
2  hereto as Exhibit A and incorporated herein by reference.
3      5.    Either during that conference call or a subsequent telephone conversation
4  on Monday, November 14, 2005, Ms. Ross-Carrière expressed a number of Momentous'
5  specific business, litigation, and tactical concerns about filing suit in the name of
6  Momentous.
7      6.    On Monday, November 14, 2005, I had another telephone conversation
8  with Ms. Ross-Carrière, in which she asked that I change the name of the client in the
9  engagement agreement that I had sent on November 11, 2005, as well as the name of
10 the plaintiff, from Momentous to CFIT. I recall this as a passing request related to her
11 earlier expressed concerns. Neither she nor I dwelled on it, as it reflected Momentous'
12 tactical considerations rather than its obligations under the engagement. It was my
13 understanding that Momentous still would be responsible for paying Morrison's bill.
14 Accordingly, I changed the name of the client and I emailed the revised engagement
15 agreement to Ms. Ross-Carrière on November 14, 2005. A copy of that agreement is
16 attached hereto as Exhibit B and incorporated herein by reference. I did not attach
17 another copy of Morrison's Billing Policies and Procedures because they had been
18 attached to the original version, but I brought that to her attention in my transmittal, a
19 copy of which is attached hereto as Exhibit C and incorporated herein by reference.
20     7.    On November 15, 2005, Ms. Ross-Carrière faxed me back the signed
21 engagement agreement. Where her title had been left blank, she inserted the words
22 "General Counsel and Director of Policy." The facsimile transmittal sheet bore the logo
23 "momentous.ca" and contained its website, email and street addresses, and telephone
24 and facsimile numbers. A signed copy of the engagement agreement and its transmittal
25 sheet is attached hereto as Exhibit D and incorporated herein by reference.
26     8.    On November 14, 2005, I sent Ms. Ross-Carrière an email giving her the
27 instructions for wiring the initial retainer of $20,000 to Morrison and asked her to let me
28 know when the wire had been sent, "so that we can track it and credit it to your account."

1  A copy of that email is attached hereto as Exhibit E and incorporated herein by
2  reference.  The next day, November 15, 2005, Pool.com., a Momentous subsidiary,
3  wired Morrison $20,000.  (Declaration of David S. Westington, Exhibit B)  Morrison sent
4  its first invoice to Momentous in Canada.  Thereafter, Morrison sent its invoices to CFIT
5  at its address in Washington, D.C., as was expressly directed by Ms. Ross-Carrière in
6  December 2005, after CFIT had been incorporated.

7       9.     CFIT had not been formed at the time Ms. Ross-Carrière signed the
8  engagement agreement.  On November 16, 2005, she sent me an email saying that "We
9  hired a new law firm today to incorporate CFIT."  A copy of that email is attached hereto
10 as Exhibit F and incorporated herein by reference.  CFIT was incorporated on or about
11 November 16, 2005, as a Delaware not-for-profit membership corporation.  [Request for
12 Judicial Notice, Exhibit B]  Morrison was not involved in that incorporation.

13      10.     On November 28, 2005, Morrison filed suit on behalf of CFIT against
14 VeriSign and ICANN in the United States District Court for the Northern District of
15 California, San Jose Division, *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.,*
16 *and Internet Corporation for Assigned Names and Numbers,* Case No.05-4826 RMW
17 (PVT).  That suit alleged various causes of action, including violations of the antitrust
18 laws, California Business and Professions Code §17200, the Lanham Act, and
19 intentional interference with prospective economic advantage.

20      11.     On January 30, 2006, Rob Hall, the CEO of Momentous, and Taryn Naidu,
21 an employee of Pool.com, met with my partners Jesse W. Markham, Jr., Esq., and
22 Stuart Plunkett, Esq., and me at Morrison's offices in San Francisco.  During that
23 meeting it became clear Mr. Hall disagreed with Ms. Ross-Carrière on certain major
24 issues in the handling of the litigation.  Ms. Ross-Carrière had been telling us that she
25 wanted to slow down the pace (and thus the cost) of the litigation, while Mr. Hall told us
26 that he wanted to maintain the pressure.  When Mr. Markham, Mr. Plunkett and I
27 requested guidance on whose instructions to follow, Mr. Hall said we should follow his
28 instructions on the handling of the litigation.  Mr. Hall also asked that we copy him on all

1  communications with Ms. Ross-Carrière going forward so that he would be kept apprised
2  of the status of the litigation. We copied him on the next several email communications.
3  Subsequently, Ms. Ross-Carrière told us we did not need to copy Mr. Hall, as she would
4  forward the information to him. Shortly before the January 30 meeting, Mr. Markham
5  had told me that Mr. Hall had told Mr. Markham that he wanted Mr. Markham to "take the
6  lead" on the antitrust issues as the litigation proceeded.
7        12.     Ms. Ross-Carrière communicated with Morrison attorneys on a near daily
8  basis throughout the litigation, by telephone and email. On February 8, 2006, she sent
9  Mr. Markham and me an email in which she said that she would call us in approximately
10 ten minutes. She added "I am including Rob Hall and his CFO on the call as the major
11 funder." A copy of that email is attached hereto as Exhibit G and incorporated herein by
12 reference. In fact, I had that call with Ms. Ross-Carrière, Mr. Hall and the CFO of
13 Momentous. Mr. Plunkett of our office joined us on the call but Mr. Markham was not
14 available. During the call, we discussed the status of the case and upcoming deadlines
15 related to discovery and filing an amended complaint. Mr. Hall instructed us on each of
16 these issues. Mr. Hall also asked us to consult with him and Ms. Ross-Carrière again in
17 late February regarding the next set of deadlines.
18       13.     Although Ms. Ross-Carrière referred to Momentous as the "major funder"
19 of the litigation, I am informed and believe that Momentous was the *sole* funder of the
20 CFIT litigation and lobbying efforts.
21       14.     Ms. Ross-Carrière acknowledged on numerous occasions that the money
22 for CFIT came from Momentous and she never told me that any money had come from
23 anyone else. She repeatedly promised that Momentous would pay Morrison's invoices,
24 but that the money would first be sent to CFIT, which would then forward it to Morrison,
25 and not directly from Momentous. In fact, she told me at different times that Momentous
26 was wiring money to CFIT expressly to pay our invoices. After her employment with
27 Momentous was terminated, she said that any further decision regarding payment was
28 up to Rob Hall.

15. Mr. Hall was neither an officer nor a director of CFIT. He was CEO of Momentous.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 28, 2008

_____/s/_____
Jennifer Lee Taylor, Declarant

I hereby attest that I have on file the original signature for the signature indicated above by a "conformed" signature (/s/) within this efiled document.

_____/s/_____
Joel D. Adler