# EXHIBIT E

*2007 NY Slip Op 9962, *; 9 N.Y.3d 375;*
*2007 N.Y. LEXIS 3718, ***

[*1] Gabriel **Fischbarg,** Respondent, v Suzanne **Doucet,** & c. et al., Appellants.

No. 175

COURT OF APPEALS OF NEW YORK

2007 NY Slip Op 9962; 9 N.Y.3d 375; 2007 N.Y. LEXIS 3718

December 20, 2007, Decided

**NOTICE:**

THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION. THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE OFFICIAL REPORTS.

**PRIOR HISTORY:** Fischbarg v. Doucet, 38 A.D.3d 270, 832 N.Y.S.2d 164, 2007 N.Y. App. Div. LEXIS 2764 (N.Y. App. Div. 1st Dep't, 2007)

**DISPOSITION:** [**1] Order affirmed, with costs, and certified question answered in the affirmative.

**CASE SUMMARY**
**PROCEDURAL POSTURE:** Respondent, a New York attorney, sued appellants, a California corporation and its president, alleging breach of contract and unjust enrichment. Appellants moved to dismiss for lack of personal **jurisdiction** under CPLR 3211(a)(8). The trial court denied the motion; the New York Appellate Division affirmed. Appellants sought further review.

**OVERVIEW:** Appellants hired the attorney to defend them in a suit filed against them in Oregon. The parties never met; they communicated about the case by telephone, mail, facsimile, and e-mail. Appellants never were physically present in New York. The attorney litigated the case from his New York office. Due to a dispute as to the terms of the attorney's retainer, appellants accepted his e-mailed resignation as their attorney. They then settled the Oregon case; this suit followed. The high court agreed with the lower courts that New York had personal **jurisdiction** over appellants under CPLR 302(a)(1). Appellants contacted the attorney in New York to retain him and thereby projected themselves into New York's legal services market and invoked the benefits and protections of its laws relating to the attorney-client relationship. Their contacts with New York were sufficient, consisting of solicitation of the attorney's services and frequent communications with him. Given these facts, they should have reasonably expected to defend against a suit based on their relationship with him in New York.

**OUTCOME:** The judgment was affirmed.

**COUNSEL:** Samuel E. Kramer ▼, for appellants.

Submitted by Gabriel **Fischbarg,** Pro se, respondent.

**JUDGES:** Opinion by Judge Ciparick. Chief Judge Kaye and Judges Graffeo, Read, Pigott and Jones concur. Judge Smith took no part.

**OPINION BY:** CIPARICK

**OPINION**

CIPARICK, J.:

In this appeal, we are asked to determine whether Supreme Court properly exercised personal **jurisdiction** over defendants, an individual and corporation, both residents of California, who retained a New York attorney to represent the corporation in an action brought in **[*2]** an Oregon federal court. Because we conclude that defendants' retention and subsequent communications with plaintiff in New York established a continuing attorney-client relationship in this state and thereby constitute the transaction of business under CPLR 302 (a) (1), we hold that the exercise of **jurisdiction** was proper.

I.

In February 2001, defendant Suzanne Bell-**Doucet,** a California resident and president of defendant Only New Age Music, Inc. (ONAM), a California corporation, placed a telephone call to plaintiff, attorney Gabriel **Fischbarg,** a member of the New York bar, at his New York office. During the ensuing conversation, **[**2]** the parties discussed plaintiff's potential representation of ONAM in a lawsuit alleging breach of contract, fraud and copyright infringement claims against Allegro Corp., a non-party Oregon corporation. On February 23, Ms. Bell-**Doucet** sent a letter to plaintiff's New York office to confirm that he "offered to take this case on a [one-third] contingency" and that she would pay him a $ 2,000 deposit "against expenses." Enclosed with the February 23 letter were "contracts, copyrighted material, [an] outline of events and copies of correspondence" for plaintiff's review. According to plaintiff, after receiving these materials, he entered into a retainer agreement with defendants by telephone from his New York office.

On May 30, 2001, Allegro filed suit against ONAM in the United States District Court for the District of Oregon. Although plaintiff was admitted to that court pro hac vice, during the course of the Oregon action, he was never physically present in Oregon. Nor did he ever meet with plaintiffs in California. Instead, plaintiff conducted his work pertaining to the Oregon action -- allegedly 238.4 hours worth -- from New York. He appeared at depositions and court conferences, **[**3]** and argued a motion for summary judgment via telephone from New York. In addition, defendants repeatedly communicated with plaintiff in New York. According to plaintiff, over the course of approximately nine months (May 2001 through January 2002) during his representation of ONAM in the Oregon action, he spoke with defendants by telephone at least twice per week regarding their case [1]. Plaintiff's time records also show that on at least 31 occasions defendants sent e-mails regarding the Oregon case to plaintiff, that on three occasions they faxed materials to him, and that defendants sent plaintiff documents, by either **[*3]** mail or e-mail [2] seven times. [3]

**FOOTNOTES**

1 Before this Court, defendants have disputed the frequency of their telephonic conversations with plaintiff. But the record reflects no such discrepancy. Instead, in an affidavit, defendant **Doucet** admitted to engaging in some unspecified "limited number" of phone calls with plaintiff. Plaintiff does admit, however, that the time records he submitted do not catalog each and every telephone call between the parties. Those records only reflect eight such calls.

2 Plaintiff has annotated his time records to indicate when he received mail or [**4] e-mail from defendants. Seven of his entries, however, do not make clear which of these media defendants used to communicate with him.

3 These calculations do not take into account communications that occurred following the fee dispute that forms the basis of this action.

On January 15, 2002, a dispute regarding the terms of plaintiff's retainer agreement arose. That same day, defendants accepted plaintiff's e-mailed resignation as their attorney 4 While the Oregon action was still pending, plaintiff moved the Oregon court for an order awarding him $ 57,096.05 for services rendered prior to his resignation. The court denied plaintiff's motion, concluding that it lacked personal and subject matter **jurisdiction** over the fee dispute. But the Oregon court held that a series of e-mails between plaintiff and defendant **Doucet** prior to his resignation established his contractual right to "a fair legal fee" at the conclusion of the Oregon action.

**FOOTNOTES**

4 Prior to his resignation, defendants made two payments to plaintiff, totaling $ 2,000. The record is silent regarding where these payments were tendered.

On January 10, 2005, defendants entered into a settlement agreement that terminated the Oregon action. [**5] On January 31, plaintiff initiated the present lawsuit seeking damages for breach of contract and unjust enrichment. His complaint recited no specific statutory basis for personal **jurisdiction** over defendants. It simply alleged that defendant **Doucet** "is an individual residing in Los Angeles, California" and that defendant ONAM "is a California corporation doing business in this State." Defendants responded with a motion to dismiss for lack of personal **jurisdiction** under CPLR 3211 (a) (8).

Supreme Court denied the motion. It held that it could properly exercise personal **jurisdiction** over defendants pursuant to CPLR 302 (a) (1) because their "activities in retaining plaintiff . . . [a] New York attorney[,] situated in New York, to represent them in the Oregon action w[ere] purposeful and a sufficient nexus exists between that retention . . . and the instant claim regarding allegedly unpaid legal fees." The Appellate Division, in a 3-2 decision, agreed.

The majority reasoned that by seeking out plaintiff's representation in New York and "[b]y working **[\*\*6]** with plaintiff on a consistent basis . . . defendants 'transacted business' in New York sufficient to subject themselves to this State's **jurisdiction**" (38 AD3d 270, 274, 832 N.Y.S.2d 164 [2007]). But two Justices dissented, finding the defendants' contacts with this state "insufficient" to confer **[\*4]** CPLR 302 (a) (1) **jurisdiction** (*id.* at 276). The dissenters supported their reasoning with our decision in *Haar v Armendaris Corp.* (31 NY2d 1040, 294 N.E.2d 855, 342 N.Y.S.2d 70 [1973]), which they interpreted as precluding plaintiff from relying upon his "own activities in New York . . . to establish **jurisdiction**" (38 AD3d at 278).

Thereafter, the Appellate Division granted defendants leave to appeal to this Court and certified to us the question whether its "order . . . which affirmed the order of the Supreme Court [was] properly made?" We answer that question in the affirmative.

II.

Defendants argue that they have transacted no business in New York because they have not purposefully availed themselves of the privileges and protections of our state's laws. According to them, their retention of plaintiff and their communications -- by telephone, facsimile and e-mail -- with him are, as a matter of law, insufficient predicates for long-arm **jurisdiction. [\*\*7]** Further, defendants contend that the courts below erroneously relied upon plaintiff's unilateral New York activities to uphold **jurisdiction.** Plaintiff argues to the contrary. We agree with plaintiff.

*HN1* CPLR 302 (a) (1) **jurisdiction** is proper "even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.,* 7 NY3d 65, 71, 850 N.E.2d 1140, 818 N.Y.S.2d 164 [2006] [quoting *Kreutter v McFadden Oil Corp.,* 71 NY2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d 195 [1988]). Purposeful activities are those with which a defendant, through volitional acts, "avails itself of the privilege of conducting activities within the forum State, thus invoking the privileges and benefits of its laws" (*McKee Elec. Co. v Rauland-Borg Corp.,* 20 NY2d 377, 382, 229 N.E.2d 604, 283 N.Y.S.2d 34 [1967]; *see also Ford v Unity Hosp.,* 32 NY2d 464, 471, 299 N.E.2d 659, 346 N.Y.S.2d 238 [1973] [holding that third-party defendant did not engage in "purposeful[] avail[ment]" because it "purposefully avoided any contacts with New York, limiting its agency agreement . . . to certain States, excluding New York"]).

Not all purposeful activity, however, constitutes a "transaction of business" **[\*\*8]** within the meaning of CPLR 302 (a) (1). Thus, we have held that "merely telephon[ing] a single order" to New York requesting a shipment of goods to another state (*see Parke-Bernet Galleries, Inc. v Franklyn,* 26 NY2d 13, 17, 256 N.E.2d 506, 308 N.Y.S.2d 337 [1970] [citing *Katz & Son Billard Prods. v Correale & Sons,* 20 NY2d 903, 232 N.E.2d 864, 285 N.Y.S.2d 871 [1967]), the transitory presence of a

corporate official here, (see McKee, 20 NY2d at 382), and communications and shipments sent here by an out-of-state doctor serving as a "consultant" to plaintiff's New York physician (see Etra v Matta, 61 NY2d 455, 458-59, 463 N.E.2d 3, 474 N.Y.S.2d 687 [1984]) do not support CPLR 302 (a) (1) **jurisdiction.** Here, however, we are not presented with such limited contacts. Instead, the case before us concerns defendants' purposeful attempt to establish an attorney-client relationship here and their direct participation in that relationship via calls, [*5] faxes and e-mails that they projected into this state over many months. Although it is impossible to precisely fix those acts that constitute a transaction of business, our precedents establish that it is the quality of the defendants' New York contacts that is the primary consideration (see Siegel, *New York Practice* § 86 [citing Longines-Wittnauer Watch Co. v Barnes & Reinecke, Inc., 15 NY2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 [1965]).

The [**9] quality of defendants' contacts here establish a transaction of business in New York. Defendants sought out plaintiff in New York and established an ongoing attorney-client relationship with him. Plaintiff's time records and affidavit demonstrate that during the course of the representation, defendants communicated regularly with him in this state.[5] These facts are similar to those in Reiner & Co. v Schwartz (41 NY2d 648, 363 N.E.2d 551, 394 N.Y.S.2d 844 [1977]). There, the defendant, a resident of Massachusetts, traveled to New York in response to an advertisement, published in the Boston Globe, seeking salesmen (see id. at 649). While here, he entered into an agreement to work on defendant's behalf in "the New England area," which was defined to exclude New York (see id.). In concluding that CPLR 302 (a) (1) **jurisdiction** over the defendant was proper in a breach of contract suit brought in this state, we emphasized that the defendant's New York contacts comprised "the purposeful creation of a continuing relationship with a New York corporation" (id. at 653; see also id. [distinguishing McKee because of the "nature and quality" of the New York contact]). A continuing relationship was also contemplated and created [**10] here, as evidenced by defendants' retention letter and the many communications cited in plaintiff's affidavit and time records, even though defendants never entered New York.[6] [*6]

**FOOTNOTES**

[5] Defendants claim that plaintiff's complaint is subject to dismissal because it failed to allege a basis for personal **jurisdiction.** Defendants are wrong (see Vincent C. Alexander, CPLR 302 Practice Commentaries § C 302:5 [HN2]["Nowhere in the CPLR's rules of pleading is there any requirement of an allegation of the court's **jurisdiction**"]). Rather, "if the defendant moves to dismiss due to the absence of a basis of personal **jurisdiction**, the plaintiff must come forward with sufficient evidence, through affidavits and other documents, to prove the existence of **jurisdiction**" (id.). This is precisely what occurred here.

[6] Defendants fail to account for the significance of this continuing relationship. This

is evidenced by their reliance upon trial court decisions rejecting CPLR 302 (a) (1) **jurisdiction** where a New York real estate agent "traveled to Florida" and executed an agreement in that state to market properties in Florida, Maryland, Washington, D.C., and Virginia with a Florida corporation (see *Kimco Exch. Place Corp. v Benz, Inc.,* 9 Misc 3d 1125[A] [**11] [Sup Ct, Nassau County 2005]) and where a California corporation purchased a quantity of yarn on one occasion from a New York manufacturer (see *So. Indus. of Clover, Ltd. v Tex-Cellence, Inc.,* 7 Misc 3d 1007[A], 801 N.Y.S.2d 242 [Sup Ct, Bronx County 2005]). Although these cases state the general proposition that telephone calls, e-mails and faxes, are not, in and of themselves, sufficient long-arm predicates, they offer little guidance in deciding the present case, which concerns the solicitation of and participation in an ongoing attorney-client relationship with a New York lawyer.

The fact that the defendant in *Reiner* was physically present in New York, whereas defendants here were not, is immaterial. It is well settled that [HN3] "one need not be physically present [here] . . . to be subject to the **jurisdiction** of our courts under CPLR 302" (*Parke-Bernet,* 26 NY2d at 17). Indeed, we re-affirmed this principle just last year in upholding long-arm **jurisdiction** over a "sophisticated institutional trader" who communicated with a New York securities broker using an "instant messaging service" akin to e-mail (*Deutsche Bank,* 7 NY3d at 69, 71 [reasoning that "technological advances in communication, enable a party [**12] to transact enormous volumes of business within a state without physically entering it"]). Thus, even when physical presence is lacking, **jurisdiction** may still be proper if the defendant "on his [or her] own initiative . . . projects himself [or herself]" into this state to engage in a "sustained and substantial transaction of business" (see *Parke-Bernet,* 26 NY2d at 18). Accordingly, in *Parke-Bernet* we held that exercising long-arm **jurisdiction** over the defendant, who actively participated in a New York auction by means of an open telephone line, was proper (see *id.* at 15, 19 [holding that "[t]he mere fact that the defendant was able to arrange to conduct his extensive and purposeful activity in New York without having to physically come here does not enable him to avoid the **jurisdiction** of our courts"]).

Like the defendant in *Parke-Bernet,* defendants here have also engaged in sustained and substantial transaction of business in New York. They contacted plaintiff here to retain him and thereby projected themselves into our state's legal services market (see *Parke-Bernet,* 26 NY2d at 18). Thereafter, on their own volition, they continued their communications with plaintiff here, utilizing [**13] his services and thus "invoking the benefits and protections of our laws relating to" the attorney-client relationship (see *id.* [telephonic communication invoked New York's auction laws]; see also *Mayes v Leipziger,* 674 F2d 178, 184 [2d Cir 1982] ["[I]n Parke-Bernet Galleries, the defendant had projected itself by means of letters and calls into market activity that was ongoing in New York, and hence had purposefully availed itself of

the privilege of conducting such activities within the state"]) 7 It is the nature and quality of these contacts, **[\*7]** through which defendants established a substantial on-going professional commitment between themselves and plaintiff, governed by the laws of our state, which support long-arm **jurisdiction.**

**FOOTNOTES**

7 Defendants maintain that they derived no benefit from our state's laws through their establishment of an attorney-client relationship with plaintiff. That is false (*see e.g.* 22 NYCRR 1210.1 [setting forth New York's "Client Bill of Rights," which provides, among other things, that clients, such as defendants, are "entitled to be charged a reasonable fee"]).

Contrary to defendants' argument, this is not a case in which plaintiff is attempting to establish **[\*\*14]** long-arm **jurisdiction** on the basis of his unilateral conduct in New York. We have previously held that an agent may not rely upon his or her own New York contacts on behalf of a principal to establish long-arm **jurisdiction** (*see e.g. Glassman v Hyder,* 23 NY2d 354, 362, 244 N.E.2d 259, 296 N.Y.S.2d 783 [1968] ["The acts of the independent broker within New York, should not, however, be attributed to the owners so as to become acts of the owners in New York"]; *Parke-Bernet,* 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 n 2 [explaining result in *Glassman* and similar cases]). But this is not such a case. Here, it is defendants' solicitation of plaintiff in New York and their frequent communications with him in this state that form the basis of **jurisdiction.**

*Haar v Armendaris Corp.* (31 NY2d 1040, 294 N.E.2d 855, 342 N.Y.S.2d 70 [1973] [adopting dissenting opinion at 40 A.D.2d 769, 770, 337 N.Y.S.2d 285]) is not to the contrary. There, the defendant, a Delaware corporation, wrote to an attorney located in Massachusetts, but admitted to the New York bar, and requested that he negotiate with a New York corporation, on its behalf (40 A.D.2d 769, 769, 337 N.Y.S.2d 285 [1972]). The attorney traveled to New York to carry out this task and sued for his legal fees here, serving the defendant in Missouri (*see id.* at 770 [Capozzoli, J., dissenting]). **[\*\*15]** Adopting the dissent, we reversed the Appellate Division's finding of CPLR 302 (a) (1) **jurisdiction** because the only support for such **jurisdiction** was an affidavit indicating, "in [a] conclusory fashion," that "plaintiff had negotiated in New York City . . . and had visited the Welfare Island site here" (*id.*). As we noted in *Parke-Bernet,* such an affidavit was insufficient because a plaintiff may not "rely [] on his own activities within the State rather than on defendant's *independent* activities" to invoke long-arm **jurisdiction** (*see id.* [quoting *Parke-Bernet,* 26 NY2d at 19 n 2]).

Unlike the plaintiff in *Haar,* plaintiff here has set forth facts establishing that defendants did engage in activities in New York. His affidavit and time records show that defendants solicited plaintiff here by telephone and mail and regularly communicated with him in New York during the course of an attorney-client relationship (*compare e.g. Etra,* 61 NY2d at 458 [rejecting long-arm **jurisdiction** where defendant doctor was solicited in Massachusetts, served as "consultant" to

plaintiff's New York doctor through written and telephonic communications, and sent an experimental drug into New York]; *Ehrenfeld v Mahfouz*, ___ NY3d ___, 2007 NY Slip Op 9961, 2007 N.Y. LEXIS 3719, [**16] p. 14 [decided today] [no long-arm **jurisdiction** where plaintiff relied upon her "unilateral activities" in New York and a judgment issued by an English court to establish a transaction of [*8] business in this state]). These are proper predicates for CPLR 302 (a) (1) **jurisdiction.** In contrast, the defendant in *Haar* had no New York contacts in connection with the plaintiff's representation of it. Its contacts were with its attorney in Massachusetts. Thus, *Haar* is fully consistent with our decision here (*cf. Mayes*, 674 F2d at 185 ["So far as we are aware, no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York"]). 8

**FOOTNOTES**

8 Defendants' reliance upon our decision in *Ferrante Equipment Co. v Lasker-Goldman Corp.* (26 NY2d 280, 258 N.E.2d 202, 309 N.Y.S.2d 913 [1970]) is similarly misplaced. There it was established that "the only activities conducted by respondent which are related to appellant's cause of action were the negotiation and execution of the indemnity agreement in [**17] New Jersey" (*see id.* 285). Here, by contrast, there are substantial and sustained New York contacts initiated by defendants.

III.

The courts below also properly concluded that the present action arises out of defendants' transaction of business in New York. There is a substantial relationship between plaintiff's action for fees accrued during his representation of defendant ONAM in the Oregon action, defendants' solicitation of plaintiff in New York to represent ONAM in that action and defendants' communications with plaintiff in this state with respect to the Oregon matter (*see Johnson v Ward*, 4 NY3d 516, 519, 829 N.E.2d 1201, 797 N.Y.S.2d 33 [2005]). These are not "merely coincidental" occurrences that have a tangential relationship to the present case (*see id.* at 520). They form the basis of this action and, indeed, plaintiff's claims for legal fees are directly dependent upon them.

Furthermore, our decision accords with due process. As we have explained, the United States Supreme Court's due process precedents provide that: [HN4] "So long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if [**18] that party is subjected to **jurisdiction** even if not 'present' in that State" (*Kreutter*, 71 NY2d at 466). Defendants here purposefully availed themselves of New York's legal services market by establishing a continuing attorney-client relationship with defendant. Their contacts here were sufficient,

consisting of solicitation of plaintiff's services here and frequent communications with him. Given these facts, they should have reasonably expected to defend against a suit based on their relationship with plaintiff in New York (see e.g. Reiner, 41 NY2d at 653 [New York contacts that "contemplated and resulted in a continuing relationship . . . certainly are of the nature and quality to be deemed sufficient to render [defendant] liable to suit here"]).

[*9] IV.

In conclusion, when defendants projected themselves into New York via telephone to solicit plaintiff's legal services, they necessarily contemplated establishing a continuing attorney-client relationship with him. Having established such a relationship and repeatedly projecting themselves into New York -- via telephone, mail, e-mail and facsimile -- to advance their legal position in the Oregon action through communications with plaintiff [**19] here, defendants purposefully availed themselves of the benefits and protections of New York's laws governing lawyers. This lawsuit arises out of defendants' contacts here. Requiring them to defend the present suit properly comports with traditional notions of fair play and substantial justice.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

* * * *

Order affirmed, with costs, and certified question answered in the affirmative. Opinion by Judge Ciparick. Chief Judge Kaye and Judges Graffeo, Read, Pigott and Jones concur. Judge Smith took no part.

Decided December 20, 2007