1    ADLER LAW FIRM
     Joel D. Adler (SBN 52979)
2    Roger T. Ritter (SBN 56039)
     101 Montgomery Street, Suite 2050
3    San Francisco, CA  94104
     Telephone:   (415) 433-5333
4    Facsimile:   (415) 433-5334
     Email:  adlerlaw@adlerlaw.net
5
     Attorneys for Plaintiff
6    MORRISON & FOERSTER LLP

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12   MORRISON & FOERSTER LLP,          Case No. CV-07-6361 EMC

13              Plaintiff,             **DECLARATION OF JENNIFER LEE
                                       TAYLOR IN SUPPORT OF PLAINTIFF'S
14   v.                                OPPOSITION TO DEFENDANT'S
                                       MOTION TO DISMISS FOR LACK OF
15   MOMENTOUS.CA CORPORATION,         PERSONAL JURISDICTION,
                                       INSUFFICIENT SERVICE OF PROCESS
16              Defendant.             AND FAILURE TO STATE A CLAIM**

17                                     **Date:**  February 20, 2008
                                       **Time:**  10:30 a.m.
18                                     **Judge:**  Hon. Edward M. Chen
                                       **Location:**  15th Floor, Courtroom C
19

20

21        **I, JENNIFER LEE TAYLOR, declare:**

22        1.    I am an attorney at law, duly admitted to practice before all courts of the

23   State of California and before this Court, and I am a partner at MORRISON &

24   FOERSTER LLP ("Morrison"), plaintiff herein.  I am a percipient witness to the facts set

25   forth herein, as they are within my own personal knowledge, and if called to testify

26   thereto, I could and would competently do so.

27   / / /

28

DECLARATION OF JENNIFER TAYLOR IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1        2.    On or about November 10, 2005, Momentous.ca Corporation

2    ("Momentous'), defendant herein, through its General Counsel and Director of Policy,

3    Jennifer Ross-Carrière, contacted me at my office in San Francisco to engage Morrison

4    to initiate litigation and lobbying efforts in an attempt to stop an agreement between

5    VeriSign, Inc. ("VeriSign"), and the Internet Corporation for Assigned Names and

6    Numbers ("ICANN"), the effect of which was to restrain or eliminate competition in the

7    expired domain name reselling industry.  Momentous was an existing client of Morrison,

8    for whom I had been doing trademark work for approximately a year and a half.  I

9    checked to make sure Morrison had no conflicts of interest in representing Momentous in

10   a suit against ICANN and VeriSign.

11       3.    On Friday, November 11, 2005, I had a telephone conference call with both

12   Ms. Ross-Carrière and with Momentous' Canadian outside counsel, Glenn Bloom, Esq.,

13   of Osler, Hoskin & Harcourt LLP.  During that call Ms. Ross-Carrière requested that

14   Morrison initiate litigation for Momentous in California against ICANN and VeriSign.

15   Although Momentous could have sued ICANN and VeriSign in any state, because their

16   alleged misconduct was nationwide, Momentous retained Morrison's San Francisco

17   office and elected the California forum, in large part because both ICANN and VeriSign

18   have their principal places of business in California.

19       4.    Ms. Ross-Carrière and I discussed the details of the representation.  I told

20   her that Morrison would require an initial retainer payment of $20,000.  That amount was

21   relatively low, given the nature of the projected litigation, but Momentous was an existing

22   client and I understood that Momentous was a highly successful company, so I had no

23   concerns that it would be able to pay our fees.  Ms. Ross-Carrière also told me that

24   Momentous was setting up a separate organization, which would be called the "Coalition

25   for ICANN Transparency" ("CFIT"), to support its activities against ICANN and VeriSign.

26   Later that day I directed my secretary to email Mr. Bloom an engagement agreement for

27   his review and forwarding to Momentous.  That agreement was addressed to Ms. Ross-

28   Carrière, it named Momentous as the client, and it attached Morrison's billing policies.

DECLARATION OF JENNIFER TAYLOR IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  A copy of that agreement, with its transmittal email and its attachments, is attached

2  hereto as Exhibit A and incorporated herein by reference.

3      5.    Either during that conference call or a subsequent telephone conversation

4  on Monday, November 14, 2005, Ms. Ross-Carrière expressed a number of Momentous'

5  specific business, litigation, and tactical concerns about filing suit in the name of

6  Momentous.

7      6.    On Monday, November 14, 2005, I had another telephone conversation

8  with Ms. Ross-Carrière, in which she asked that I change the name of the client in the

9  engagement agreement that I had sent on November 11, 2005, as well as the name of

10 the plaintiff, from Momentous to CFIT.  I recall this as a passing request related to her

11 earlier expressed concerns.  Neither she nor I dwelled on it, as it reflected Momentous'

12 tactical considerations rather than its obligations under the engagement.  It was my

13 understanding that Momentous still would be responsible for paying Morrison's bill.

14 Accordingly, I changed the name of the client and I emailed the revised engagement

15 agreement to Ms. Ross-Carrière on November 14, 2005.  A copy of that agreement is

16 attached hereto as Exhibit B and incorporated herein by reference.  I did not attach

17 another copy of Morrison's Billing Policies and Procedures because they had been

18 attached to the original version, but I brought that to her attention in my transmittal, a

19 copy of which is attached hereto as Exhibit C and incorporated herein by reference.

20     7.    On November 15, 2005, Ms. Ross-Carrière faxed me back the signed

21 engagement agreement.  Where her title had been left blank, she inserted the words

22 "General Counsel and Director of Policy."  The facsimile transmittal sheet bore the logo

23 "momentous.ca" and contained its website, email and street addresses, and telephone

24 and facsimile numbers.  A signed copy of the engagement agreement and its transmittal

25 sheet is attached hereto as Exhibit D and incorporated herein by reference.

26     8.    On November 14, 2005, I sent Ms. Ross-Carrière an email giving her the

27 instructions for wiring the initial retainer of $20,000 to Morrison and asked her to let me

28 know when the wire had been sent, "so that we can track it and credit it to your account."

8254                                    3                        Case No. CV-07-6361 EMC

1    A copy of that email is attached hereto as Exhibit E and incorporated herein by

2    reference.  The next day, November 15, 2005, Pool.com., a Momentous subsidiary,

3    wired Morrison $20,000.  (Declaration of David S. Westington, Exhibit B)  Morrison sent

4    its first invoice to Momentous in Canada.  Thereafter, Morrison sent its invoices to CFIT

5    at its address in Washington, D.C., as was expressly directed by Ms. Ross-Carrière in

6    December 2005, after CFIT had been incorporated.

7         9.     CFIT had not been formed at the time Ms. Ross-Carrière signed the

8    engagement agreement.  On November 16, 2005, she sent me an email saying that "We

9    hired a new law firm today to incorporate CFIT."  A copy of that email is attached hereto

10   as Exhibit F and incorporated herein by reference.  CFIT was incorporated on or about

11   November 16, 2005, as a Delaware not-for-profit membership corporation.  [Request for

12   Judicial Notice, Exhibit B]  Morrison was not involved in that incorporation.

13        10.    On November 28, 2005, Morrison filed suit on behalf of CFIT against

14   VeriSign and ICANN in the United States District Court for the Northern District of

15   California, San Jose Division, *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.,*

16   *and Internet Corporation for Assigned Names and Numbers,* Case No.05-4826 RMW

17   (PVT).  That suit alleged various causes of action, including violations of the antitrust

18   laws, California Business and Professions Code §17200, the Lanham Act, and

19   intentional interference with prospective economic advantage.

20        11.    On January 30, 2006, Rob Hall, the CEO of Momentous, and Taryn Naidu,

21   an employee of Pool.com, met with my partners Jesse W. Markham, Jr., Esq., and

22   Stuart Plunkett, Esq., and me at Morrison's offices in San Francisco.  During that

23   meeting it became clear Mr. Hall disagreed with Ms. Ross-Carrière on certain major

24   issues in the handling of the litigation.  Ms. Ross-Carrière had been telling us that she

25   wanted to slow down the pace (and thus the cost) of the litigation, while Mr. Hall told us

26   that he wanted to maintain the pressure.  When Mr. Markham, Mr. Plunkett and I

27   requested guidance on whose instructions to follow, Mr. Hall said we should follow his

28   instructions on the handling of the litigation.  Mr. Hall also asked that we copy him on all

1    communications with Ms. Ross-Carrière going forward so that he would be kept apprised

2    of the status of the litigation.  We copied him on the next several email communications.

3    Subsequently, Ms. Ross-Carrière told us we did not need to copy Mr. Hall, as she would

4    forward the information to him.  Shortly before the January 30 meeting, Mr. Markham

5    had told me that Mr. Hall had told Mr. Markham that he wanted Mr. Markham to "take the

6    lead" on the antitrust issues as the litigation proceeded.

7        12.    Ms. Ross-Carrière communicated with Morrison attorneys on a near daily

8    basis throughout the litigation, by telephone and email.  On February 8, 2006, she sent

9    Mr. Markham and me an email in which she said that she would call us in approximately

10   ten minutes.  She added "I am including Rob Hall and his CFO on the call as the major

11   funder." A copy of that email is attached hereto as Exhibit G and incorporated herein by

12   reference.  In fact, I had that call with Ms. Ross-Carrière, Mr. Hall and the CFO of

13   Momentous.  Mr. Plunkett of our office joined us on the call but Mr. Markham was not

14   available.  During the call, we discussed the status of the case and upcoming deadlines

15   related to discovery and filing an amended complaint.  Mr. Hall instructed us on each of

16   these issues.  Mr. Hall also asked us to consult with him and Ms. Ross-Carrière again in

17   late February regarding the next set of deadlines.

18       13.    Although Ms. Ross-Carrière referred to Momentous as the "major funder"

19   of the litigation, I am informed and believe that Momentous was the *sole* funder of the

20   CFIT litigation and lobbying efforts.

21       14.    Ms. Ross-Carrière acknowledged on numerous occasions that the money

22   for CFIT came from Momentous and she never told me that any money had come from

23   anyone else.  She repeatedly promised that Momentous would pay Morrison's invoices,

24   but that the money would first be sent to CFIT, which would then forward it to Morrison,

25   and not directly from Momentous.  In fact, she told me at different times that Momentous

26   was wiring money to CFIT expressly to pay our invoices.  After her employment with

27   Momentous was terminated, she said that any further decision regarding payment was

28   up to Rob Hall.

DECLARATION OF JENNIFER TAYLOR IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

15.    Mr. Hall was neither an officer nor a director of CFIT.  He was CEO of Momentous.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 28, 2008

_____/s/_____
Jennifer Lee Taylor, Declarant

I hereby attest that I have on file the original signature for the signature indicated above by a "conformed" signature (/s/) within this efiled document.

_____/s/_____
Joel D. Adler

8254

6

Case No. CV-07-6361 EMC