ADLER LAW FIRM
Joel D. Adler (SBN 52979)
Roger T. Ritter (SBN 56039)
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
Telephone:    (415) 433-5333
Facsimile:    (415) 433-5334
Email:  adlerlaw@adlerlaw.net

Attorneys for Plaintiff
MORRISON & FOERSTER LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MORRISON & FOERSTER LLP, | Case No. CV-07-6361 EMC |
| Plaintiff, | **DECLARATION OF PETER J. PFISTER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, INSUFFICIENT SERVICE OF PROCESS AND FAILURE TO STATE A CLAIM** |
| v. | |
| MOMENTOUS.CA CORPORATION, | |
| Defendant. | |

**Date:**      February 20, 2008
**Time:**      10:30 a.m.
**Judge:**     Hon. Edward M. Chen
**Location:**  15th Floor, Courtroom C

        I, PETER J. PFISTER, declare:

        1.  I am a partner and former chairman of Morrison & Foerster LLP ("Morrison"), plaintiff herein, and I currently serve as one of its general counsel.  My responsibilities include resolution of fee disputes.  In that capacity I have communicated with representatives of Momentous.ca Corporation ("Momentous"), defendant herein.  I am a percipient witness to the facts set forth in this declaration and if called to testify thereto, I could and would competently do so.

2.      In late February 2006 I was asked to assist on issues relating to the failure of Momentous.ca Corporation ("Momentous"), defendant herein, to pay for Morrison's services in litigation and related efforts before the Antitrust Division of the U.S Department of Justice.  Rob Hall, CEO of Momentous, was continuing to direct Morrison to take further action both on the litigation and with the Department of Justice, but several bills for past work remained unpaid.

3.      On or about March 1, 2006, I spoke by telephone with Jennifer Ross-Carrière, then General Counsel and Director of Policy of Momentous, to discuss specific billing issues that had been identified.  After an amicable discussion, Ms. Ross-Carrière told me she understood Morrison's position -- as well as its willingness to make certain adjustments -- and would talk to Rob Hall and get back to me.  Ms. Ross-Carrière also agreed that she had earlier promised Jennifer Taylor of Morrison certain specific payments (one of $80,000 and another of $4,500) that had not yet been made, and repeated her understanding that those payments would be made right away.  In response to Ms. Ross-Carrière's request, I agreed that Morrison would also be willing to accept payment of the remaining amounts over time (at an agreed-upon payment schedule), for which she expressed appreciation, and she told me she would get back to me with a proposed payment schedule as to those remaining amounts.  At no time did she suggest that Momentous was not responsible for payment, or that payments would not be made.  During this conversation, I was also informed that another law firm was being considered to handle the litigation matters as which Momentous had engaged Morrison.

4. On or about March 6, 2006, I learned that Ms. Ross-Carrière's employment with Momentous had suddenly ended.  I called her at the telephone number she had left and asked with whom I should follow up on any issues that might remain as to the payment of the outstanding bills.  She told me I needed to talk to Rob Hall; that he was making the decisions concerning the engagement and any payments to Morrison; and that without his direction, nothing would happen.  After Ms. Ross-Carrière's departure

1    Morrison received no material further payment, not even the specific payments she had

2    promised in early 2006.

3        5.  At Ms. Ross-Carrière's advice, I called Rob Hall numerous times over the next

4    several months.  He never took or returned any of my calls.

5        6.  After further calls and voice-mail messages to Rob Hall went unanswered, on

6    June 8, 2006, I wrote an e-mail message to Mr. Hall that Momentous was obligated to

7    pay the amounts owed to Morrison; I hoped that we could finally discuss and resolve the

8    matter.  I also reminded Mr. Hall in my voice-mail and e-mail messages that Momentous

9    engaged Morrison, specifically induced and directed our work, and had made explicit

10   promises to pay.

11       7.  On June 8, 2006, Rob Hall wrote a response to my e-mail of that date, telling

12   me that I should follow up with CFIT with regard to the outstanding bills.  He did

13   conclude in his message that he was willing to discuss the matters further with Jesse

14   Markham, stating:  "As I do not know you, I would be happy to speak to Jesse

15   [Markham] on this matter should you need further clarity."  A copy of the June 8, 2006,

16   email exchange is attached hereto as Exhibit A and incorporated herein by reference.  I

17   am informed and believe that Jesse Markham thereafter called and e-mailed Rob Hall

18   with requests to speak further on the matter, and that Mr. Hall never responded to Mr.

19   Markham.

20       8.  On October 5, 2006, I called Lilian Opdam, the new General Counsel for

21   Momentous, to make a further effort to determine if an amicable resolution was

22   possible.  Ms. Opdam reported that Rob Hall was now taking the position that

23   Momentous had no obligation to pay the outstanding invoices.  She wanted my view of

24   the basis for Momentous' obligation, requested copies of correspondence and indicated

25   a willingness to discuss the matter.  After some discussion, I agreed to send her copies

26   of correspondence.  I raised one other matter of some concern:  a long-outstanding bill

27   for a professor-consultant, Greg Rosston, the payment of which we had understood Mr.

28

1    Hall to have authorized.  I told Ms. Opdam I would send copies of correspondence

2    relating to that consultant, as well.

3        9.  On October 10, 2006, I sent Ms. Opdam a letter with substantial

4    correspondence enclosed for her review.  A copy of that letter (without its extensive

5    attachments) is attached hereto as Exhibit B and incorporated herein by reference.  In

6    that letter I explained in some detail our view that Momentous was obligated to pay the

7    outstanding invoices.  I also urged payment of the professor/consultant, Mr. Rosston.

8        10.  Over the next month and a half, I tried to get a response from Ms. Opdam to

9    the specific information I provided concerning Momentous' obligation to pay the

10   outstanding bills.  Although Ms. Opdam at first indicated a willingness to discuss the

11   matter, on November 27, 2006, Ms. Opdam wrote that "Momentous has no further ties

12   with CFIT, and we believe your questions are best addressed to CFIT."  A copy of that

13   letter is attached hereto as Exhibit C and incorporated herein by reference.  I am

14   informed and believe that Ms. Opdam is no longer employed at Momentous.

15       11.    Despite explicit promises to do so, Momentous never paid even the

16   modest, long-outstanding bill to the professor/consultant, Mr. Rosston (which Morrison

17   ultimately paid), or the specific amounts Ms. Ross-Carrière had promised to pay at the

18   beginning of 2006.

19       12.    Morrison's outstanding bills remain unpaid.

20       I declare under penalty of perjury under the laws of the United States of America

21   that the foregoing is true and correct.  Executed on January 28, 2008

22

23                        _____/s/_____
                         Peter J. Pfister, Declarant

24

25

26

27

28

1      I hereby attest that I have on file the original signature for the signature

2  indicated above by a "conformed" signature (/s/) within this efiled document.

3

4                                              _____/s/_____

5                                              Joel D. Adler

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PETER PFISTER IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS