STEIN & LUBIN LLP
Jonathan Sommer (SBN 209179)
600 Montgomery Street, 14th Floor
San Francisco, CA 94111
Telephone: (415) 981-0550
Facsimile: (415) 981-4343
jsommer@steinlubin.com

Attorneys for Defendant
MOMENTOUS.CA CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MORRISON & FOERSTER LLP,<br><br>Plaintiff,<br><br>v.<br><br>MOMENTOUS.CA CORPORATION,<br><br>Defendant. | Case No. 07-6361 EMC<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, INSUFFICIENT SERVICE OF PROCESS AND FAILURE TO STATE A CLAIM**<br><br>Date: February 20, 2008<br>Time: 10:30 a.m.<br>Judge: Hon. Edward M. Chen<br>Location: 15th Floor, Courtroom C |

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|------|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 3 |
|  | A. | Momentous is not subject to general jurisdiction in California | 3 |
|  | B. | Momentous is not subject to specific jurisdiction based on the CFIT engagement letter | 4 |
|  | C. | Morrison's own communications show that CFIT was the client | 4 |
| III. | ARGUMENT | | 5 |
|  | A. | Momentous is not subject to jurisdiction in California | 5 |
|  |  | 1. No General Jurisdiction | 5 |
|  |  | 2. No Specific Jurisdiction | 6 |
|  |  | a. Morrison's contentions are inconsistent and contradicted by the language of the Morrison-CFIT engagement letter | 6 |
|  |  | b. Morrison's own actions show that it understood that CFIT and Morrison were the parties to the engagement letter | 9 |
|  |  | c. When strictly construed against Morrison, the engagement letter cannot establish the basis for jurisdiction over Momentous | 10 |
|  | B. | The complaint fails to state a claim | 12 |
|  | C. | Morrison's request to take unidentified discovery should be denied | 13 |
| IV. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alderman v. Hamilton*, 205 Cal. App. 3d 1033 (1988)..................................................................11

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848 (9th Cir. 1993) ................................11

*Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082 (9th Cir. 2000) .......................5

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)..............................................................................13

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
    334 F.3d 390 (4th Cir. 2003) .....................................................................................................14

*Central States, Southeast and Southwest Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) .....................................................................................................13

*Dimensional Comms., Inc. v. Oz Optics Ltd.*, 218 F. Supp. 2d 653 (D.N.J. 2002) .........................1

*Emag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL 3783548 (N.D. Cal. Dec. 21, 2006).........14

*Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299 (9th Cir. 1986) ..........................................5, 6

*In re County of Orange*, 241 B.R. 212 (C.D. Cal. 1999)..............................................................11

*In re Lindmark*, 4 Cal. State Bar Ct. Rptr. 668, 2004 WL 541864 (Mar. 15, 2004) .....................11

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)..............................................................13

*Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365 (1997) ................................................................11

*Neal v. Bank of America*, 93 Cal. App. 2d 678 (1949) ..................................................................12

*Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670 (S.D. Cal. 2001).....................14

*Phillips v. Worldwide Internet Solutions*, 2006 WL 1709189 (N.D. Cal. June 20, 2006) ............11

*Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993) .................................................................11

*Severson & Werson v. Bolinger*, 235 Cal. App. 3d 1569 (1991)...................................................11

*Studio A Entertainment, Inc. v. Active Distributors, Inc.*, 2008 WL 162785
    (N.D. Ohio Jan. 15, 2008)...........................................................................................................1

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,
    2007 WL 2238900 (S.D. Cal. Aug. 2, 2007) ............................................................................14

*Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750 (7th Cir. 2002)................12


**Statutes**

Cal. Civ. Code § 1638......................................................................................................................7

Cal. Civ. Code § 1640......................................................................................................................7


**Rules**

California Rules of Professional Conduct 3-310(C) & (F)............................................................10

# I.
# INTRODUCTION

Momentous.ca Corporation ("Momentous"), a Canadian corporation, moved to dismiss the complaint filed by Morrison & Foerster LLP ("Morrison") for lack of personal jurisdiction, insufficient service of process and failure to state a claim.[1] Morrison has pled a claim for breach of written contract and a dependent claim for breach of common counts. In its motion, Momentous showed that the written contract is an attorney-client engagement letter between Morrison and the Coalition for ICANN Transparency, Inc. ("CFIT"), a Delaware corporation, not Momentous. Morrison drafted the engagement letter and specifically identified CFIT as its client. The engagement letter is not a joint representation letter. CFIT, as the client, eventually decided to replace Morrison as counsel. In seeking to collect from CFIT, Morrison told CFIT that it was bound to the engagement agreement. In its opposition to Momentous' motion to dismiss, Morrison now states that there is "no factual support" for Momentous' contention that the engagement agreement was between Morrison and CFIT.

Morrison relies on this engagement letter as the purported basis for exercising specific jurisdiction over Momentous. However, Jennifer Taylor, the Morrison attorney who drafted the letter, admits that she "changed the name of the client" from Momentous to CFIT. <u>She did not merely add CFIT as an additional client</u>. Of course, to add CFIT as an additional client would not have been difficult. It would merely require Ms. Taylor to add CFIT's name next to Momentous and use Morrison's form letter for joint representation. That did not happen.

Morrison does its best to gloss over this dispositive revision of its draft engagement letter. Ms. Taylor avers that the change was in response to a "passing request" that she did not "dwell" on and, amazingly, that the substitution of client did not affect Momentous' obligations under the attorney-client agreement. Whether or not Morrison "dwelled" on the

---

[1] Morrison contends that personal service on a Canadian corporate defendant is sufficient. There is a split in authority. *Compare Studio A Entertainment, Inc. v. Active Distributors, Inc.*, 2008 WL 162785, at *3 n.2 (N.D. Ohio Jan. 15, 2008) (insufficient) *with Dimensional Comms., Inc. v. Oz Optics Ltd.*, 218 F. Supp. 2d 653, 659 (D.N.J. 2002) (sufficient). The latter case, cited by Morrison, appears to turn on the court's interpretation of "huissiers" in Black's Law Dictionary. *Dimensional*, 218 F. Supp. 2d at 659. Momentous will concede service and focus on the issues of lack of personal jurisdiction and failure to state a claim.

change, the words of the contract define the rights and obligations under a written contract.

Morrison understood the effect of this change. In a detailed email that Morrison wrote back in March 2006, two weeks after CFIT replaced it as counsel, Morrison's lead attorney wrote to CFIT: "[T]he retention agreement committed *CFIT* to pay our November invoice by December 20." This contemporaneous email shows who Morrison understood to be obligated under the engagement letter, notwithstanding its claim now that "the engagement agreement was not and could not have been made with CFIT."[2] See Opp., at 3.

Morrison's belated effort to undo the effects of Ms. Taylor's drafting also fails to address the other language of the attorney-client agreement. In its motion, Momentous showed that Morrison & Foerster stated, in the section titled "Scope of Engagement," that "you have requested that we represent you." As the next sentence in the engagement letter states that Morrison & Foerster will "represent the Coalition for ICANN Transparency," the word "you" can only mean CFIT. Morrison does not respond to this point. The word "Momentous" appears nowhere in the body of the engagement letter.

While Morrison avoids discussing the body of the attorney-client engagement letter, it seeks to create some ambiguity as to the nature of the Morrison-CFIT engagement letter by focusing on such incidentals as the use of Momentous' fax cover sheet, the mailing address for the letter and the title used by Jennifer Ross-Carriere. As CFIT was in the process of being organized, as Morrison knew, these incidentals have no significance and cannot override the language of the agreement. Moreover, Morrison does not address the legal bar to its effort to create some purported ambiguity in the drafting of the engagement letter: Any ambiguity in a contract must be strictly construed against the attorney, and that rule is given great force in the attorney-client context. In addition, the Court must exercise great care and reserve before hauling a Canadian defendant into court. When applying these rules, Morrison's minutiae does not justify hauling Momentous into California court.

Morrison is a sophisticated law firm. If Morrison sought to bind Momentous to an

---

[2] As evidence of its purported belief that Momentous was bound to the engagement letter, not CFIT, Morrison cites to self-serving collection letters that it later wrote to Momentous.

attorney-client agreement and the jurisdiction of California courts, Morrison could have added CFIT as a joint client rather than substitute Momentous in its place. Morrison could have required Momentous to sign a guaranty. Morrison had any number of options—and still has the option of pursuing CFIT. To the extent, however, that Morrison purportedly sought to bind Momentous to an engagement letter that would require Momentous to defend itself in California court, the burden was on Morrison to draft an engagement letter that so provided. As it failed to do so, Morrisons' cases finding specific jurisdiction based on attorney-client contracts are inapposite. Likewise, Morrison cannot state a claim for breach of written contract where there is no written agreement.

Recognizing the weakness of its position, Morrison asks for leave to take discovery in the vague hope that it might uncover facts supporting general jurisdiction or unpled claims. The law is clear that foreign defendants should not be subject to discovery based on conclusory, non-specific allegations. There is no specific fact question here to resolve as to general jurisdiction. It is even more inappropriate for Morrison to seek discovery as to unpled claims, as discovery on the merits is not appropriate where jurisdiction is at issue.

## II.
## FACTUAL BACKGROUND

### A. Momentous is not subject to general jurisdiction in California.

While Morrison quibbles that Mr. Hall's declaration is framed in the present tense, all of his factual assertions are equally true as of the time that Morrison was representing CFIT in the November 2005-March 2006 time frame. *See* Reply Declaration of Rob Hall in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process and Failure to State a Claim ("Hall Reply Decl."), ¶ 2. Momentous was a Canadian corporation located in Ottawa, Ontario. *Id.* All of its employees were in Canada. *Id.* It had no office outside Canada. *Id.* It conducted no business in California. *Id.* It had no agent for service of process in California. *Id.* It held no license in California. *Id.* It was not incorporated in California. *Id.* Some subsidiaries of Momentous engaged in Internet transactions that may have occasionally involved California residents; however, Momentous itself did not. *Id.*

B.     **Momentous is not subject to specific jurisdiction based on the CFIT engagement letter.**

Morrison admits that Momentous was the client in its draft attorney-client engagement letter and that Morrison specifically "changed the name of the client" from Momentous to CFIT in the signed, final version of the engagement letter. *See* Declaration of Jennifer Lee Taylor in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Taylor Decl."), ¶ 6.

The substitution of CFIT for Momentous as client is the only change in the engagement letter identified by Ms. Taylor in her declaration. She does not refer to any other reason for undertaking a revision of the draft engagement letter. Nonetheless, having revised the engagement letter for this sole purpose, Ms. Taylor tries to downplay its significance by claiming that the change in client was "a passing request" and that she did not "dwell" on it. *Id.*

After admitting that CFIT is "the client in the engagement agreement," *see id.*, Ms. Taylor makes the conclusory legal assertion that removing Momentous as the client and substituting in CFIT only reflected Momentous' "tactical considerations rather than its obligations under the engagement." *Id.* The words of the contract, not Ms. Taylor's alleged opinion, govern the obligations of the parties.

C.     **Morrison's own communications show that CFIT was the client.**

Morrison fails to explain its own documents created subsequent to the engagement letter that reaffirm that the letter created an attorney-client contract between Morrison and CFIT. For example, on March 1, 2006, Morrison sent an email to Ms. Ross-Carriere discussing the possibility that "CFIT may hire new counsel." Ex. F to Declaration of Rob Hall in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process and Failure to State a Claim ("Hall Decl."). Morrison does not explain why Morrison would send an email stating that CFIT would hire new counsel when Morrison now claims that it took direction from Momentous. *See* Opp., at 10-11, 18.

Morrison also does not respond to Momentous' evidence that the CFIT litigation is continuing without Momentous being part of CFIT. Obviously, CFIT is not Momentous' alter

ego, notwithstanding Morrison's attack on its former client.[3] Momentous withdrew as a member of CFIT in September 2006. Hall Decl., ¶ 13. Prior to its withdrawal from CFIT, Momentous made all contributions to CFIT that it was required to pay, including contributions for August and September of 2006. *Id.* CFIT has never claimed that Momentous failed to make any contribution that it was required to make as a supporter. *Id.*

Finally, Morrison stated in an email sent March 23, 2006, shortly after CFIT changed counsel, that "the retention agreement committed CFIT to pay our November invoice by December 20." Ex. A to Hall Reply Decl. That is the same CFIT that Momentous now claims could not have been party to any retention agreement. Opp., at 3.

## III.
## ARGUMENT

**A.    Momentous is not subject to jurisdiction in California.**

    1.    **No General Jurisdiction**

Morrison makes no showing that Momentous has contacts of the sort required for general jurisdiction that "approximate physical presence." *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Morrison cites no case law at all in support of its general jurisdiction argument because there is none. There is simply no court that has ever found general jurisdiction under facts remotely comparable to those here.

Nonetheless, Morrison apparently feels compelled to make the halfhearted assertion, without any authority, that Momentous would "likely be subject to general jurisdiction in California."[4] Opp., at 7. As evidence of contacts that purportedly approximate physical

---

[3]    Notwithstanding its duties of confidentiality and loyalty to its former client, CFIT, Morrison sprinkles its opposition with references to CFIT's alleged litigation strategy and tactics.
[4]    Such speculation about the mere possibility of jurisdiction is not sufficient to meet Morrison's burden of proof in responding to a motion to dismiss for lack of personal jurisdiction. Morrison bears the burden of establishing that the Court has jurisdiction over Momentous. *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). If the Court rules based on affidavits and discovery material without holding an evidentiary hearing, then Morrison's burden is to make a prima facie showing of personal jurisdiction. *Id.*
    Likewise, Morrison tries to shift its burden of proof by arguing that the Court should presume that Ms. Ross-Carriere will provide adverse testimony and cites risibly inapplicable authority in support. Opp., at 12. Ms. Ross-Carriere is a former employee who is not within Momentous' control. That is not a basis for an adverse inference, and Morrison cannot avoid its burden of proof in establishing jurisdiction.

presence, Morrison asserts that Momentous' subsidiary, Pool.com, resells domain names in California. It is well-settled, however, that in the context of parents and subsidiaries, jurisdictional issues are decided based on the contacts of each corporate entity, and the contacts of affiliated entities are irrelevant. *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301-02 (9th Cir. 1986). Even more spurious is Morrison's claim that Momentous should be subject to general jurisdiction because it has to conduct its Internet operations in conjunction with ICANN and Verisign. Opp., at 7. If this were true, every domain name registrar from Korea to Zimbabwe would automatically be subject to jurisdiction in California, as ICANN and Verisign control the Internet (as shown by Morrison's own complaint in the CFIT litigation). *See* CFIT Complaint, Ex. A to Hall Decl., ¶¶ 1-4. Finally, Morrison notes that it performed a small amount of trademark work on behalf of Momentous. Hall Reply Decl., ¶ 3. There is no law of which Momentous is aware that seeking to register a trademark subjects a company to general jurisdiction.

    2.    **No Specific Jurisdiction**

As there is obviously no general jurisdiction, the issue of jurisdiction reduces to a question of specific jurisdiction. Morrison relies on cases finding that a client who retained a law firm was subject to specific jurisdiction in the forum where the lawsuit was litigated. As CFIT was the client, Morrison's proposed basis for jurisdiction cannot stand.

    a.    **Morrison's contentions are inconsistent and contradicted by the language of the Morrison-CFIT engagement letter.**

The distinction between the cases relied on by Morrison and this case is self-evident: Morrison admits that it changed the client in the engagement letter from Momentous to CFIT. Morrison does allege that Momentous participated to some degree in the litigation, but Morrison cites no case holding that a witness or other participant in litigation is subject to specific jurisdiction on that basis. Such a rule would have dramatic implications for all who participate in litigation.

Absent a contract between Morrison as the attorney and Momentous as the client, the basis for jurisdiction disappears. The engagement letter states who the client is, i.e., that

Morrison & Foerster will "represent the Coalition for ICANN Transparency." Morrison & Foerster may claim that it viewed its decision to contract with CFIT rather than Momentous as a "passing request" that it did not "dwell" on, but contractual choices have consequences. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). If Morrison chooses to try to pursue a member now, it must do so where the member is located, i.e., in Canada.

In order to try to avoid the effect of the change in client, Morrison highlights and premises its contractual argument on the language of the first sentence of the engagement letter: "This is to set forth the basic terms upon which **you** have engaged our firm to represent the Coalition for ICANN Transparency ('CFIT')." Opp., at 12 (bold type and underlining added by Morrison). Morrison claims that this means that Momentous engaged Morrison, but Morrison ignores the very next sentence: "In general, you have requested that we represent you ... ." *See* Engagement Letter, Ex. D to Taylor Decl., at 1. Because "you" is equated to the client, "you" means CFIT. Morrison does not attempt to explain how the word "you" can have different meanings in two adjacent sentences. *See* Cal. Civ. Code § 1640 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

Nor does Morrison explain the payment obligation of the client as set forth in Paragraph 4 of the engagement letter:

> 4.      <u>General Responsibilities of Attorney and Client.</u>  Morrison & Foerster will provide the above-described legal services for your benefit, for which *you will be billed in the manner set forth above.* We will keep you apprised of developments as necessary to perform our services and will consult with you as necessary to ensure the time, effectively and efficient completion of our work.
>
> We understand that you will provide us with such factual information and documents as we require to perform the services, will make any business or technical decisions and determinations as are appropriate to facilitate the completion of our services, and will remit payment of our billing statements within thirty (30) days of receipt, in accordance with the procedures described above. [emphasis added]

Ex. D to Taylor Decl., at 2 (emphasis added). Again, as Morrison equated "you" to CFIT, the payment obligation runs to CFIT, and CFIT paid Morrison $205,000. *See* Motion, at 6.

Morrison tries to reconcile sending bills to CFIT with its position that the letter is not a Morrison-CFIT engagement letter by contending that its form billing policies provide that Morrison will "forward our billing statement to a third party designated by you who is assuming payment responsibility for your legal bills … ." Opp., at 3. Thus, Morrison's contrived argument is that it "forwarded" the billing statements to CFIT as a "third party"—even though CFIT was its own client. CFIT was billed as a client, not as a third party.

Morrison also argues that CFIT could not be a party to the attorney-client agreement because CFIT was not formed until the next day. At the time that Morrison entered into the agreement, it knew that CFIT was being formed. *See* Taylor Decl., ¶ 4. CFIT performed under the contract by paying fees to Morrison, which Morrison accepted; CFIT just did not perform as desired by Morrison. In the same vein, Morrison tries to place great weight on the fact that Ms. Ross-Carriere inserted her Momentous title into the blank signature block at the end of the engagement letter. Morrison claims that her insertion of her Momentous title in the blank signature block shows that the word "you" in the engagement letter actually refers to Momentous, not CFIT. Opp., at 12. That is a non sequitur. The word "you" is defined by the body of the agreement, particularly the first two adjacent sentences, not by the way Ms. Ross-Carriere filled out the signature block. Under Morrison's reasoning, if Ms. Ross-Carriere had written "CEO" instead of "General Counsel," the meaning of "you" would be instantly changed—notwithstanding the text of the agreement. Again, Morrison does not want to give effect to the language of the agreement. It is neither surprising nor probative that Ms. Ross-Carriere did not insert a CFIT title that she was soon to acquire, but did not yet have.

Morrison also turns to equitable appeals about the alleged involvement of Momentous in the CFIT lawsuit, and sets up straw man arguments to knock down: "If Momentous had no connection with the lawsuit and Mr. Hall had no connection with CFIT, by [sic] why would he tell Morrison to follow his instructions?" Opp., at 11. In his affidavit, Mr. Hall did not state that Momentous had no connection to CFIT; to the contrary, he disclosed that "Momentous assisted in the founding of the Coalition for ICANN Transparency Inc. ('CFIT') as a Delaware nonprofit corporation that would promote the interests of its member businesses … ."

Hall Decl., ¶ 4. Morrison would rather direct attention to irrelevant allegations as to whether Momentous had ties to CFIT than focus on the real issue as to why Morrison knowingly and freely chose to contract with CFIT as the client in place of Momentous.

        b.    **Morrison's own actions show that it understood that CFIT and Morrison were the parties to the engagement letter.**

Not only did Morrison draft an engagement letter that can only be construed as a Morrison-CFIT engagement letter, Morrison's own actions show that it fully understood what it was doing in drafting and later seeking to enforce the letter against CFIT.

First, Ms. Taylor admits that she "changed the name of the client" in the attorney-client engagement letter from Momentous to CFIT. She did not add Momentous as a client. She did not use a joint representation letter, which Morrison undoubtedly keeps a form on its system for use in all joint representation cases.

Second, as shown in Mr. Hall's reply declaration, Jesse Markham, Ms. Taylor's colleague and the lead Morrison attorney on the matter, wrote a long email seeking to enforce the engagement letter against CFIT, not Momentous. In that email, Mr. Markham wrote:

> **"[T]he retention agreement committed CFIT to pay our November invoice by December 20."**

Ex. A to Hall Reply Decl. (emphasis added). He copied Ms. Taylor, the drafter of the engagement letter on his email. She did not disagree. The email was written on March 23, 2006, two weeks after CFIT replaced Morrison with new counsel.

In spite of its assertion back then that CFIT was the contracting party, Morrison now asserts that Momentous is misleading the Court by asserting that CFIT was the contracting party:

> Momentous' fundamental contention is that the engagement agreement was between Morrison and CFIT, not Momentous. A review of its declarations reveals no factual support whatsoever for this contention. There is, however, key unrebutted evidence before this Court that the agreement was between Momentous and Morrison.

Opp., at 3. Apparently, in Morrison's view, Ms. Taylor's specific substitution of CFIT for Momentous constitutes "no factual support" for Momentous' contention that CFIT was the client in the attorney-client engagement letter. Apparently, Morrison feels comfortable sending an

email stating that the engagement letter committed CFIT to pay the November invoice by December 20, and then turning around and arguing almost two years later that the engagement letter created obligations in Momentous, but not CFIT. Apparently, when money is on the line, Morrison is willing to contend that changing the client from Momentous to CFIT was just a "passing request" that did not affect contractual obligations in an attorney-client letter.

Third, Mr. Markham's assertion that CFIT was obligated to pay Morrison's invoice confirms that the word "you" in the engagement letter means CFIT. When Mr. Markham emailed CFIT on March 23, 2006 (copying Ms. Taylor and Mr. Pfister) and stated that "the retention agreement committed CFIT to pay our November invoice by December 20," his language mirrored the language in the engagement letter, which reads:

> *You* further agreed to pay our invoice for November time prior to December 20, 2005.

Ex. D to Taylor Decl., at 2 (emphasis added). Thus, there is no question that Morrison itself believed that "you" in the engagement letter meant CFIT—at least until it was convenient to argue otherwise. Neither Ms. Taylor nor Mr. Pfister responded to Mr. Markham's email to tell Mr. Markham that he was making a mistake and that Momentous, not CFIT, was obligated under the retention letter.

Fourth, Morrison did not obtain any consent to joint representation as would be required by California Rule of Professional Conduct 3-310(C). As to whether the letter could be construed as some sort of promise to pay by Momentous, Morrison did not obtain the consent of CFIT as required by Rule 3-310(F), which states that a member shall not accept compensation for representing a client from anyone other than the client absent the client's mandatory, informed written consent.

        c.      **When strictly construed against Morrison, the engagement letter cannot establish the basis for jurisdiction over Momentous.**

The dispositive question is whether Momentous, a Canadian corporation, should be hauled into California based on the attorney-client engagement letter in question. That question reduces to the issue of whether Momentous was the client in the attorney-client engagement letter.

In determining who are the parties to the engagement letter, the Court must strictly construe the engagement letter against Morrison & Foerster. *See In re County of Orange*, 241 B.R. 212, 221 (C.D. Cal. 1999); *Severson & Werson v. Bolinger*, 235 Cal. App. 3d 1569, 1572 (1991); *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1037 (1988) (all holding that attorney-client contracts must be strictly construed against the attorney). That rule applies with extra force in the context of attorney-client relationships. *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365, 1370 (1997); *accord*, *In re Lindmark*, 4 Cal. State Bar Ct. Rptr. 668, 2004 WL 541864, at *8 (Mar. 15, 2004). Morrison does not discuss this line of authority holding that attorney-client contracts are strictly construed against the attorney, for obvious reasons.

Not only must the Court strictly construe the contract against the attorney, Morrison admits that great care and reserve must be exercised when exercising jurisdiction over a defendant from a foreign nation such as Momentous. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993); *see also Phillips v. Worldwide Internet Solutions*, 2006 WL 1709189, at * 5, 7 (N.D. Cal. June 20, 2006) (twice citing this concern). The jurisdictional barrier is thus higher in regard to an alien defendant than against a citizen from a sister state. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

When strictly construing the contract against Morrison & Foerster, and in taking great care and reserve before hauling a Canadian entity into California court, this Court should find that Momentous was not the client in the attorney-client engagement letter. In summary, Morrison's lead partner on the case, Mr. Markham, said that the letter bound CFIT and made no mention of Momentous. Morrison's partner who issued the engagement letter, Ms. Taylor, did not disagree with him. In her declaration, Ms. Taylor admits that she "changed the name of the client" from Momentous to CFIT. She did not merely add CFIT as a joint client with Momentous and issue a joint representation letter; she affirmatively replaced Momentous as the client. Ms. Taylor further wrote that "you have engaged our firm to represent the Coalition for ICANN Transparency ("CFIT")" and, in the next sentence, that "you have requested that we represent you." Based on this language, and in the larger context of an attorney-client letter, it is clear that "you" means CFIT. CFIT may be subject to specific jurisdiction in California; Momentous is not.

While Morrison is clever enough to pick and probe and seek to create any hint of ambiguity wherever possible, it was Morrison's burden, as a matter of law, not to let ambiguity develop in the first place. To the extent any ambiguity may exist, Morrison caused it, and Morrison must accept the consequences of any failure on its part to draft a contract that reflected what it purportedly intended. Thus, the Court should not allow Morrison to confuse the issue based on after-the-fact minutiae like the incidental use of a cover sheet or a title. It should be based on the language of the contract as drafted by Morrison, which named CFIT as the client.

The Court should dismiss the complaint against Momentous for lack of personal jurisdiction.

**B.     The complaint fails to state a claim.**

Morrison asserts two causes of action, one for breach of contract and one for common counts. If a cause of action for breach of written contract fails, a cause of action for common counts based upon the same transaction fails as well. *Neal v. Bank of America*, 93 Cal. App. 2d 678, 681 (1949).

Morrison and Foerster's assertion that every breach of written contract is automatically immune from motions to dismiss is wrong. When the actual written contract contradicts the allegations in the complaint, the terms of the contract trump the allegations in the complaint, and dismissal is proper if the contract negates the claim. *See Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754, 758 (7th Cir. 2002). Likewise, in the specific context of contract and common counts claims where it is apparent that no contract or contractual obligation exists, California courts have sustained demurrers to the complaint. *See Neal*, 93 Cal. 2d at 681-82 (dismissing breach of contract and common counts claims for failure to plead any contract between the parties).

As shown above, when strictly construed against Morrison, the engagement letter does not create a contract between Morrison and Momentous. CFIT is the client identified in the attorney-client engagement letter. Morrison does not identify any other contract or guaranty that could be the basis of a breach of written contract claim. Thus, there is no basis for a claim of breach of written contract, and the common counts claim fails with it.

Morrison tries to avoid its failure to state a claim by claiming that it is just a fact issue, Opp., at 17, but the Court is allowed to consider the express provisions of the contract on a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (court may consider documents referenced in the complaint) (overruled on other grounds). If the case is not dismissed for lack of personal jurisdiction, it should be dismissed with prejudice for failure to state a claim.

As stated in the motion, there will be no unfairness to Morrison & Foerster because it freely agreed to contract with CFIT. To the extent it was concerned about potential nonpayment from a membership corporation, it could have demanded a written guaranty from Momentous and/or other members of CFIT, but did not. Morrison fails to respond to these considerations in making its purported equitable appeal that Morrison performed work for which it was not paid. Morrison & Foerster sought to collect from CFIT, but has not sued CFIT.

## C. Morrison's request to take unidentified discovery should be denied.

Morrison claims that if the Court finds that the written contract is an attorney-client agreement between Morrison and CFIT as Momentous contends, then Morrison should be allowed to take discovery "on general jurisdictional issues." Opp., at 18. Presumably, Morrison is referring to its purported belief that "discovery would reveal additional facts" showing that Momentous is subject to general jurisdiction, which Morrison says is "likely." Opp., at 7.

Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists. *Central States, Southeast and Southwest Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Burdensome discovery against a foreign defendant is not appropriate at a stage where the district court is trying to determine whether it has any power over the foreign defendant. *Id.* at 947. The Court should certainly not subject foreign defendants to substantial jurisdictional discovery based on conclusory, non-fact-specific jurisdictional allegations. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). While this "somewhat strict standard" increases the plaintiff's difficulty of establishing jurisdiction over foreign corporations, that is a proper result where a foreign corporation structures its business so as to separate itself from its wholly-owned United States subsidiaries. *Id.* at 186.

Even for American defendants, jurisdictional discovery is not supposed to be a fishing expedition. Jurisdictional discovery should be denied where the request is based on speculation and conclusory assertions that the plaintiff might be able to establish jurisdiction if it is able to subject the defendant to unspecified discovery. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). To the extent that discovery may be allowed, it should be limited to jurisdictional discovery that responds to a specific jurisdictional question; general merits discovery should not be permitted. *See, e.g., Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 2007 WL 2238900, at *8 (S.D. Cal. Aug. 2, 2007) (refusing to allow merits discovery); *Emag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006) (limiting jurisdictional discovery to the issue of specific jurisdiction, not general jurisdiction); *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 675 (S.D. Cal. 2001) (courts routinely stay discovery on the merits pending resolution of jurisdictional challenges).

Momentous does not identify any specific jurisdictional facts that it needs to obtain in discovery. Having failed to identify any such jurisdictional facts, Morrison then requests to take discovery in support of *unpled* claims. Opp., at 18. In other words, Morrison seeks discovery to do exactly what the law says it cannot do—engage in a fishing expedition as to the merits of claims, in this case claims that have not even been pled. *See Orchid*, 298 F.R.D. at 675 (merits discovery would place a burden on defendant which far exceeds any benefit to plaintiff and would waste resources if the jurisdictional motion is granted).

Not only is Morrison not entitled to discovery on the merits of unpled claims, Morrison's proposed claims make no sense. First, as to alter ego, Morrison specifically represented to the Northern District of California that CFIT was not aligned with any particular member:

> CFIT is a non-profit membership corporation with memberships beyond those of registrars. Specifically, CFIT's members include registrars as well as registrants, back order service providers, and other Internet stakeholders. ... As an organization representing all of its different members, CFIT is not so closely related to any one membership group—in this case, the registrars—or to its contractual relationships that CFIT would anticipate being bound by the terms of

those members' contracts.

*See* Plaintiff's Opposition to Verisign's Motion to Dismiss for Improper Venue, Ex. A to Reply Declaration of Jonathan Sommer in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process and Failure to State a Claim, at 8.  It should not be granted leave to contradict its assertions to this Court now, and Morrison does not need discovery about the nature of its own former client, CFIT.  Second, as to misrepresentation, if the Court finds that the agreement binds CFIT and not Momentous, it is not possible that Momentous could have misrepresented its intent to honor a contractual commitment where no such contractual commitment exists.

      Morrison is not entitled to discovery based on its vague and cursory request, and Momentous should not be subjected to discovery absent clear showing of need for narrow, specific jurisdictional discovery that will not unduly burden Momentous.  Morrison's claimed entitlement to a fishing expedition on unpled claims should be rejected altogether.

## IV.
## CONCLUSION

      For the foregoing reasons, the Court should dismiss the action for lack of personal jurisdiction.  To the extent that the action is not dismissed for lack of personal jurisdiction, it should be dismissed with prejudice for failure to state a claim.

February 6, 2008                             STEIN & LUBIN LLP

By: _____/s/_____
Jonathan Sommer
Attorneys for Defendant
MOMENTOUS.CA CORPORATION