# EXHIBIT A

JESSE W. MARKHAM, JR. (CA SBN 87788)
WILLIAM L. STERN (CA SBN 96105)
JENNIFER LEE TAYLOR (CA SBN 161368)
STUART C. PLUNKETT (CA SBN 187971)
JMarkham@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
COALITION FOR ICANN TRANSPARENCY INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COALITION FOR ICANN TRANSPARENCY INC., a Delaware corporation,<br><br>     Plaintiff,<br><br>   v.<br><br>VERISIGN, INC., a Delaware corporation; INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS, a California corporation,<br><br>     Defendants. | Case No.  05-4826 (RMW) PVT<br><br>**PLAINTIFF'S OPPOSITION TO VERISIGN'S MOTION TO DISMISS FOR IMPROPER VENUE**<br><br>Date:  February 10, 2006<br>Time:  9:00 a.m.<br>Ctrm:  Courtroom 6<br><br>Judge: Hon. Ronald M. Whyte |

**TABLE OF CONTENTS**

                                                                                    **Page**

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION..............................................................................................1

ARGUMENT ....................................................................................................2

    A.    CFIT's Claims Are Not Claims "Relating To" The RRA Within The Meaning Of The Forum Selection Clause ................................................2

    B.    The Forum Selection Clause Does Not Apply To CFIT Because CFIT Is Not A Party To The RRA And Could Not Have Foreseen Being Bound By The Forum Selection Clause. ...................................................................7

    C.    As A Matter Of Public Policy, CFIT Should Not Be Bound By The Forum Selection Clause Because Its Member Registrars Agreed To The Clause In The Context Of VeriSign's Unfair Bargaining Power. .........................11

CONCLUSION ...............................................................................................13

# TABLE OF AUTHORITIES

## CASES

Page

*Bense v. Interstate Battery Sys. of Am., Inc.*,
683 F.2d 718 (2nd Cir. 1982) ...................................................................................... 4, 5

*Comerica Bank v. Whitehall Specialties, Inc.*,
352 F. Supp. 2d 1077, 1082, n.6 (C.D. Cal. 2004) ...................................................... 10

*Dentsply Int'l, Inc. v. Benton*,
965 F. Supp. 574 (M.D. Pa. 1997) ............................................................................... 12

*Eads v. Woodmen of the World Life Ins. Soc'y*,
785 P.2d 328 (Okla. App. 1989) .................................................................................. 12

*Gootnick v. Lighter*,
No. C05-02787SI, 2005 WL 3079000 (N.D. Cal. Nov. 16, 2005) ................................ 7

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*,
949 F. Supp. 1427 (N.D. Cal. 1997) ................................................................ 3, 4, 8, 10

*Hill v. Pac. Gas & Elec. Co.*, C94-4247 FMS,
1995 WL 86567, at *1-2 (N.D. Cal. Feb. 21, 1995) ...................................................... 4

*Hugel v. Corp. of Lloyd's*,
999 F.2d 206 (7th Cir. 1993) ........................................................................................ 10

*Kotan v. Pizza Outlet, Inc.*,
400 F. Supp. 2d 44 (D.D.C. 2005) .............................................................................. 8, 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ............................................................................ 3, 4, 8, 9

*Marano Enters. of Kansas v. Z-Teca Rests.*,
254 F.3d 753 (8th Cir. 2001) ....................................................................................... 10

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ...................................................................................... 5

*Nelson v. Master Lease Corp.*,
759 F. Supp. 1397 (D. Minn. 1991) ............................................................................. 12

*Oakland-Alameda County Coliseum Auth. v. CC Partners*,
101 Cal. App. 4th 635 (2002) ....................................................................................... 5

*Panetta v. Sap Am., Inc.*,
No. C051696 RMW, 2005 WL 1774327 (N.D. Cal. July 26, 2005) ............................... 4

*R. A. Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) .......................................................................................... 11

*Rini Wine Co., Inc. v. Guild Wineries & Distilleries*,
604 F. Supp. 1055 (E.D. Ohio 1985) ............................................................................. 5

*Scott v. Guardsmark Sec.*,
   874 F. Supp. 117, 120 (D.S.C. 1995) ........................................................................ 12

*Straight-Out Promotion, LLC v. Brearly (Int'l) Ltd*,
   No. 3:04CV-473-H, 2005 U.S. Dist. LEXIS 10403 (W.D. Ky. May 27, 2005) ......................... 7

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*,
   915 F.2d 1351 (9th Cir. 1990) ................................................................................ 10

*Wade v. Ilisagvik Coll.*,
   No. A05-86 CV JWS, 2005 WL 2340710 (D. Alaska Sept. 20, 2005) .................................. 3, 5

**INTRODUCTION**

1

2          Defendant VeriSign requests that Plaintiff Coalition for ICANN Transparency, Inc.'s

3  ("CFIT") claims be dismissed for improper venue on the ground that CFIT's member registrars,

4  and allegedly therefore CFIT, are bound by a forum selection clause in the Registry-Registrar

5  Agreement ("RRA") between CFIT's member registrars and VeriSign.  VeriSign's entire motion

6  rests on one meritless premise:  that CFIT's claims are claims "relating to" the RRA within the

7  meaning of the forum selection clause of that agreement.  VeriSign argues that, because the RRA

8  gives registrars the rights and obligations required to perform the functions of a registrar, any

9  claims whatsoever that a registrar brings against VeriSign in its capacity as a registrar are

10  governed by the forum selection clause *regardless of whether those claims are based on a breach*

11  *or termination of the contract and regardless of whether the claims relate in any other way to an*

12  *interpretation of the provisions of the contract.*  Neither the case law nor common sense supports

13  such a broad sweeping definition of "relating to" in a forum selection clause.  Indeed, not one of

14  the cases cited by VeriSign supports its argument that the claims here are sufficiently related to

15  the RRA so as to sweep them into the scope of the forum selection clause.  Instead, they support

16  the opposite conclusion.  In this case, there can be no real question as to whether this suit relates

17  to the RRA.  In the 217 pages of substantive briefing that have been filed thus far in this case, not

18  once is the RRA between VeriSign and its registrars mentioned.  Nothing could demonstrate more

19  clearly that there is simply no relationship between the claims here and the RRA.  Thus, the

20  forum selection clause of the RRA does not apply.

21          Because the "relating to" requirement is not met here, the registrars would not be bound

22  by the forum selection clause if they had brought this suit themselves.  Therefore, the issue of

23  whether CFIT—an organization to which registrars belong—also is bound by the clause is moot.

24  Even if it were not moot, however, the forum selection clause would not apply here because

25  neither CFIT, whose membership is broader than just registrars, nor its activities are so closely

26  related to the contractual relationship between the registrars and VeriSign that it would foresee

27  being bound by the terms of the RRA in any litigation CFIT brings.  CFIT represents the interests

28  of all of its members and they include, among others, registrants.  A typical registrant would

1  know nothing about the RRA between VeriSign and the registrars and would have no basis

2  whatsoever to foresee being bound by the forum selection clause in the RRA.  It would be

3  completely unfair to bind CFIT, and therefore its non-registrar members, to a forum selection

4  clause in a contract with which it, and many of its members, have no involvement.

5      Finally, even if the scope of the forum selection clause were found to sweep in such

6  unrelated claims as CFIT has brought here, along with a non-party association whose membership

7  reaches beyond the registrars, the forum selection clause should not be enforced.  The forum

8  selection clause was accepted by registrars in the context of VeriSign's unfair bargaining power.

9  Because VeriSign has a monopoly on the registration of domain names on the .com and .net top

10 level domains ("TLDs"), CFIT's registrar members had no choice but to enter into the RRA with

11 VeriSign if they wanted to provide registration services.  (Mot. of Def. VeriSign, Inc. to Dismiss

12 Compl. for Improper Venue ("VeriSign Venue Mot.") at 6 ("Indeed, these registrars would not be

13 able to provide domain name registration services in the .com and .net TLDs at all . . . but for

14 being parties to the RRA.").)  Where a forum selection clause was agreed to in the context of such

15 unbalanced bargaining power, it would be inconsistent with public policy to enforce the forum

16 selection clause, especially against CFIT—a non-party to the RRA whose claims here do not

17 depend in any way on an interpretation of the terms of the RRA.

## ARGUMENT

18

19   A.   **CFIT's Claims Are Not Claims "Relating To" The RRA Within The Meaning
          Of The Forum Selection Clause.**

20

21     VeriSign's entire venue motion rests on one premise:  that CFIT's claims are claims

22 "relating to" the RRA within the meaning of the forum selection clause of that agreement.  If that

23 premise fails, which it does, VeriSign's motion fails.

24     VeriSign argues that because the forum selection clause states that it applies to "any legal

25 action 'relating to'" the RRA instead of "any legal action 'arising from'" the RRA, the scope of

26 the forum selection clause is very broad.  (Id. at 9.)  But VeriSign reaches too far in contending

27 that "relating to" is so broad as to include legal claims that have absolutely nothing to do with the

28

1    contract.[1] The very cases that VeriSign itself has cited (which presumably are the cases VeriSign

2    believes best support its position) demonstrate that a forum selection clause applies to claims in a

3    suit only if either: (1) the claims are based on or arise out of a breach or termination of the

4    contract containing the forum selection clause; or (2) the contract itself will be at issue in the

5    resolution of the claims, thereby requiring the court to interpret the contract's meaning.

6        In distinguishing between the scope of "arising under" and "related to" in forum selection

7    clauses, courts have held that "arising under" describes claims that are themselves *directly based*

8    *on* the terms of the contract, i.e., the contract and/or its terms are elements in the cause of action

9    or the cause of action arises from conduct that constitutes a breach or termination of the contract.

10   *See, e.g., Wade v. Ilisagvik Coll.*, No. A05-86 CV JWS, 2005 WL 2340710, at *2-3 (D. Alaska

11   Sept. 20, 2005) (claims "brought under" or "arising under" a contract are claims that directly

12   relate to the contract, meaning the claim is the source of rather than a defense to the claims).

13   Such claims include, for example, breach of contract, breach of the covenant of good faith and

14   fair dealing, and intentional interference with a contract. *Id.* (finding that the latter two claims

15   "arise under" the contract).

16       In contrast, as the cases below demonstrate, courts have found claims "relating to" a

17   contract to include both (1) those claims that "arise under" the contract as described above and (2)

18   those claims and their corresponding defenses that will in some manner require the court to

19   interpret the terms of the contract. Such claims may include, for example, claims against which a

20   defendant raises the contract as a defense or claims that are collateral to a breach of contract

21   action in the case. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 511, 514 (9th Cir.

22   1988) (finding tort claims that depended on an interpretation of the contract to be "related to" the

23   contract); *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1433-1434

24   (N.D. Cal. 1997) (finding claims to be "related to" the contract where the contract was raised as a

25       [1] Although VeriSign is correct that the case law recognizes that phrases such as "relating
     to" necessarily create a broader scope than the phrase "arising under," courts have not clearly
26   delineated a bright line rule or standard that governs the scope of "related to" in a forum selection
     clause. Instead, the meaning of "relating to" must be gleaned from its application to the facts in
27   the case law.

28

defense to those claims).  Indeed, *every* case cited by VeriSign interpreting the scope of a forum

selection clause falls into one of these categories:

- *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 511, 514 (9th Cir. 1988) - This case involved a related breach of contract suit pending in Florence, Italy and claims that could not "be adjudicated without analyzing whether the parties were in compliance with the contract."  The Court found that, "because the tort causes of action alleged by Manetti-Farrow relate[d] to 'the central conflict over the interpretation' of the contract, they [were] within the scope of the forum selection clause."

- *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1433-1434 (N.D. Cal. 1997) - The court found that the plaintiff's claims for copyright infringement, unfair competition and false advertising were within the scope of the forum selection clause of a contract where the defendant asserted that contract as a defense to those claims, thereby requiring the court to interpret the contract in order to resolve the case.

- *Panetta v. Sap Am., Inc.*, No. C051696 RMW, 2005 WL 1774327, at *6 (N.D. Cal. July 26, 2005) - Plaintiff brought a claim for breach of contract that included the forum selection clause, along with claims for breach of the California Labor Code and wrongful termination in violation of public policy.  The court found that the latter two claims were within the scope of the forum selection clause because they were related to the rights and duties described in the contract and therefore required consideration of its terms in order to determine whether the plaintiff was wrongly terminated.

- *Hill v. Pac. Gas & Elec. Co.*, C94-4247 FMS, 1995 WL 86567, at *1-2 (N.D. Cal. Feb. 21, 1995) - Plaintiff brought two claims for breach of contract and claims that the defendants breached the contracts with the intention of causing emotional distress, that the breaches were the result of fraud and unfair competition, and that an employee of one defendant slandered the plaintiff with remarks regarding the plaintiff's performance under the contract.  The court found the tort claims to be subject to the forum selection clause of the contracts because all of the tort claims were related to the rights and duties under the contracts, therefore requiring the court to interpret the contract.

- *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 719 (2nd Cir. 1982) – The plaintiff brought a suit for antitrust violations based on the termination of a contract by the defendant.  The defendant invoked a forum selection clause that applied to "suits or causes of action arising directly or indirectly" from the agreement.  The court held that the forum selection clause of the contract applied to the antitrust claims because it was based on or arose from the wrongful termination of the agreement.  The court explained that "[a]lthough the complaint was brought pursuant to federal antitrust law, the gist of Bense's claim is that Interstate wrongfully terminated the agreement, thereby damaging Bense."

- *Rini Wine Co., Inc. v. Guild Wineries & Distilleries*, 604 F. Supp. 1055, 1058-1059 (E.D. Ohio 1985) – The plaintiff sued the defendant for breach of a distributorship agreement and for violations of federal and state antitrust law based on the same conduct as the breach of agreement claim. The court held that the antitrust claims were subject to the forum selection clause of the agreement because all of the claims in the dispute—both the breach of contract claim and the antitrust claims—were based on or arose from the termination of the distributorship agreement.[2]

- *Wade v. Ilisagvik Coll.*, No. A05-86 CV JWS, 2005 WL 2340710 (D. Alaska Sept. 20, 2005) – The plaintiff taught business administration at the defendant, Ilisagvik College, for three years, each year on a one-year contract. When the defendant refused to renew plaintiff's contract the fourth year, she protested through the college's grievance system, but to no avail. She then brought suit against the defendants alleging violations of federal constitutional and statutory law and state statutory and common law. Because the forum selection clause in the contract applied only to claims "brought under" (which is interpreted the same way as "arise under") the contract, the court found that only the plaintiff's claims in which the contract was the direct source of the cause of action were subject to the forum selection clause—her claim for intentional interference with the contract, her claim for breach of the implied covenant of good faith and fair dealing, and her claim for violation of public policy, which was encompassed within her claim for breach of the implied covenant.

These cases[3]—all cases cited by VeriSign to support its position that the forum selection clause applies to CFIT's claims—clearly illustrate that CFIT's claims do not "relate" to the RRA

---

[2] It is important to note that, although *Bense* and *Rini Wine* both are cases in which the Court applied a forum selection clause to antitrust claims, they are very different from the case here. In both of those cases, the antitrust claims were based on or arose from *the termination of the contract containing the forum selection clause*. Here, by contrast, the antitrust and other claims raised by CFIT are not based on any alleged breach or termination of the RRA and indeed have nothing to do with the RRA.

[3] VeriSign also cited two arbitration clause cases in support of its position. Their holdings are consistent with the cases discussed above. One case involved an arbitration clause that applied to disputes relating to the License Agreement or the relationship established by the License Agreement. *See Oakland-Alameda County Coliseum Auth. v. CC Partners*, 101 Cal. App. 4th 635, 642 (2002). The court found that claims based on a dispute over the payment of premium seating revenues, which were required by the License Agreement, were related to the License Agreement and the relationship established by the License Agreement. *Id.* The other case involved an arbitration clause requiring that the clause apply to disputes "arising hereunder." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). The court held that the clause applied only to those disputes relating to the interpretation and performance of the contract itself, refusing to apply the forum selection clause to a quantum meruit claim despite the fact that the terms of the contract were a potential defense to the claim. *Id.*; *see Wade*, 2005 WL 2340710 at *3 (discussing *Mediterranean's* analysis).

1    and that the forum selection clause therefore does not apply here. Unlike the cases above, in this

2    case, none of CFIT's claims implicates the RRA in any way. First, CFIT's claims are in no way

3    based on allegations that VeriSign has breached or terminated the RRA; CFIT has made no such

4    allegations. Second, CFIT's claims do not involve the RRA, or either party's performance under

5    the RRA, such that a court would ever have to interpret its terms. Instead, CFIT's claims include

6    federal antitrust claims, and claims of unfair competition, cybersquatting, and intentional

7    interference with prospective economic advantage. (*See* Complaint ("Compl.").) All of these

8    claims are based on the terms of agreements *between VeriSign and ICANN* regarding the .com

9    and .net registeries. (*See* Compl. ¶¶ 2-4, 30-78.) They have nothing to do with the RRAs

10   between VeriSign and its registrars. Moreover, neither VeriSign nor ICANN has raised the RRA

11   as a substantive defense to any of CFIT's claims. (*See* Answer of Def. VeriSign, Inc. to Compl.;

12   Answer of Def. ICANN to Compl.) Therefore, the Court would never have to look to the RRA

13   for purposes of resolving this case.

14        The Court need not rely merely on the Complaint and Answers in this case to know that

15   none of CFIT's claims, and none of VeriSign's (or ICANN's) substantive defenses, has anything

16   to do with the RRA. Although this case has been filed only recently, the Court has a substantial

17   amount of substantive briefing before it in addition to VeriSign's Answer. CFIT applied for a

18   temporary restraining order, providing 20 pages of briefing and accompanying declarations on the

19   issues it has raised. (*See* CFIT's *Ex Parte* Application for a Temporary Restraining Order

20   ("TRO") and accompanying documents.) VeriSign opposed the application with a 24-page brief

21   and supporting declarations. (Opp'n by Def. VeriSign, Inc. to *Ex Parte* Application for

22   Temporary Restraining Order Filed by CFIT ("VeriSign TRO Opp'n").) ICANN, VeriSign's co-

23   defendant, also opposed with a 24-page brief and supporting declarations. (ICANN's Opp'n to

24   Pl.'s *Ex Parte* Application for Temporary Restraining Order ("ICANN's TRO Opp'n").) In

25   addition, both VeriSign and ICAAN have filed motions for judgment on the pleadings, giving the

26   Court an additional 49 pages worth of briefing on the issues here. (Mot. of Def. VeriSign, Inc. for

27   J. on the Pleadings ("VeriSign Pld. Mot."); Def. ICANN's Mot. for J. on the Pleadings (ICANN's

28

1   Pld. Mot.").)  In all of this briefing, the RRAs between VeriSign and the registrars are not

2   mentioned once.[4]

3           No party has invoked the RRA in any way, either to support or defend against the claims

4   at issue, and the court therefore will not need to interpret or consider the contract for any reason.

5   In short, the RRA simply has nothing to do with this case.  CFIT therefore cannot be bound by the

6   RRA's forum selection clause.  *See, e.g., Gootnick v. Lighter,* No. C05-02787SI, 2005 WL

7   3079000, at *1-2 n.1, 7 (N.D. Cal. Nov. 16, 2005) (holding that a forum selection clause in a

8   promissory note using the term "arising under *or related to*" the note did not apply in that case

9   because "[i]t [was] unlikely that many legal issues in the claims asserted [t]here [would] turn on

10  the legal interpretation of the note itself, and none of the other relevant documents or contracts

11  contain[ed] such a provision.") (emphasis added); *Straight-Out Promotion, LLC v. Brearly (Int'l)*

12  *Ltd,* No. 3:04CV-473-H, 2005 U.S. Dist. LEXIS 10403, at *14 (W.D. Ky. May 27, 2005)

13  (holding that the forum selection clause in a Distribution Agreement did not apply because the

14  Agreement had never been executed, but noting that the clause would not have applied anyway in

15  that case where the dispute between the parties did not involve the interpretation of the written

16  Distribution Agreement because Straight-Out claimed damages based on Brearly's breach of

17  another contract, not the Distribution Agreement).

18          **B.      The Forum Selection Clause Does Not Apply To CFIT Because CFIT Is Not A
                      Party To The RRA And Could Not Have Foreseen Being Bound By The**
19                   **Forum Selection Clause.**

20          Because the "relating to" requirement is not met here, the registrars, as parties to the

21  contract, would not be bound by the forum selection clause even if they had brought this suit

22  themselves.  Therefore, the issue of whether CFIT, who is *not a party* to the RRA, is bound by the

23  clause is moot.  Even if the issue were not moot, however, the forum selection clause would not

24

25  _____

26          [4] A copy of an RRA is attached as Exhibit D to the Declaration of Sean Morris ("Morris
    Decl.") filed in support of VeriSign's opposition to CFIT's application for a TRO.  However,
27  aside from authenticating the document, the declaration does not discuss the RRA and there is no
    mention of it in the briefing.  (Morris Decl. at 5.)

28

PLAINTIFF'S OPPOSITION TO VERISIGN'S MOTION TO DISMISS FOR IMPROPER VENUE                      7
05-4826 (RMW) PVT

sf-2064987

1    apply here because CFIT is not a party to the RRA and has no relationship to the RRA, the

2    performance of the RRA, or any dispute related to it.

3         The Ninth Circuit and other courts have held that a forum selection clause may apply to a

4    non-party to a contract if that non-party or its activities are so closely related to the contractual

5    relationship itself or to a dispute arising out of the contract that the non-party should have

6    foreseen being bound by the terms of the agreement. *See Manetti-Farrow*, 858 F.2d at 514 ("the

7    alleged conduct of the non-parties is so closely related to the contractual relationship that the

8    forum selection clause applies to all defendants"); *Graham Tech.*, 949 F. Supp. at 1434 (applying

9    the Ninth Circuit rule that a forum selection clause can be applied to non-signatories to the

10   contract where the alleged conduct of those parties is closely related to the contractual

11   relationship); *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 49 (D.D.C. 2005) (a non-party is

12   bound by a forum selection clause if the contract term is closely related to the dispute such that

13   the non-party can foresee that it will be bound). The forum selection clause does not apply here

14   because neither CFIT (including CFIT's non-registrar members) nor CFIT's activities are so

15   closely related to the contractual relationship between the registrars and VeriSign under the RRA

16   that CFIT (or its non-registrar members) would have foreseen being bound by the terms of the

17   RRA in any litigation CFIT brings against VeriSign.

18        CFIT is a non-profit membership corporation with memberships beyond those of

19   registrars. Specifically, CFIT's members include registrars as well as registrants, back order

20   service providers, and other Internet stakeholders. (Compl. ¶¶ 7, 141.) All of these members

21   share certain interests, which CFIT represents on their behalf. However, CFIT's various

22   members have different roles in the domain name marketplace and therefore pursue different

23   activities related to those roles. As an organization representing all of its different members,

24   CFIT is not so closely related to any one membership group—in this case, the registrars—or to its

25   contractual relationships that CFIT would anticipate being bound by the terms of those members'

26   contracts. Specifically, CFIT has no reason to be familiar with the terms of the RRA or to be

27   involved with the performance under the RRA. Nor has CFIT raised any dispute over the RRA.

28

1   Likewise, CFIT's non-registrar members would have no reason to anticipate being bound

2 by the forum selection clause of the RRAs between VeriSign and the registrars.  For example,

3 CFIT's members include registrants.  (Compl. ¶¶ 7, 141 (stating that CFIT's members include

4 Internet domain name registrars, registrants, back order service providers, and other Internet

5 stakeholders).)  Registrants are persons or entities who have registered one or more domain

6 names.  A typical registrant would never know about the RRA, let alone become involved in the

7 performance under the contract or in disputes related to the RRA.  As a hypothetical example, a

8 small restaurant owner in San Francisco, California, who registers a domain name for his

9 restaurant through a registrar who also is located in San Francisco would know nothing about the

10 RRA and would have absolutely no reason to foresee being bound by the forum selection clause

11 of the RRA, requiring him to litigate in Virginia.  Binding CFIT to the forum selection clause

12 would unfairly prejudice its non-registrar members who, like the restaurant owner in San

13 Francisco, would have no reason to know about the RRA or its forum selection clause, and

14 therefore could not possibly have foreseen being bound by the RRA.  In addition because this

15 dispute in no way involves the RRA, neither CFIT nor its non-registrar members could have

16 foreseen being subject to the RRA's forum selection clause by virtue of bringing this suit.

17   CFIT's situation is very different from the non-parties' situations in the cases cited by

18 VeriSign for the proposition that CFIT should be bound by the forum selection clause.  In every

19 one of the cases cited by VeriSign, the non-parties clearly knew about the contract and were

20 involved in some manner in the performance of the contract or a dispute regarding the terms or

21 performance of the contract.  In addition, in every case, the suit was for breach of that contract

22 and claims related thereto:

23   •  *Kotan v. Pizza Outlet, Inc.,* 400 F. Supp. 2d 44, 48-49 (D.D.C. 2005) - Non-party
24     plaintiff, Kotan, was bound by the forum selection clause of the contract at issue
     in the suit because he was the principal of his co-plaintiff and party to the
25     contract, MB Group, and because Kotan had established MB Group for the
     express purpose of developing and operating Vocelli Pizza stores pursuant to the
26     contract containing the forum selection clause.

27   •  *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 511, 514 & n.5 (9th Cir.
     1988) - Defendants who were the parent company and sister subsidiaries of their
28     fellow defendant and party to the contract at issue in the case were bound by the

forum selection clause where all of the companies were aware of the contract and where all of the companies' activities were so closely related to the contractual relationship and performance under the contract that they should have foreseen being bound by it.

- *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1434 (N.D. Cal. 1997) - The successor to the rights of a computer program allegedly developed under the contract, as well as an individual who assisted in the development of the program developed under the contract, were both bound by the forum selection clause in the contract in a suit involving any alleged breach of that contract.

- *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) - The third-party beneficiary of the contract at issue in the suit was bound by the forum selection clause of the contract.

- *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-210 (7th Cir. 1993) - Two of three plaintiffs who sued for breach of the contract were bound by the forum selection clause of that contract because the third plaintiff and party to the contract was the President, Chairman of the Board, and shareholder of 99% and 100% of the share of the other two plaintiffs and because the party to the contract decided himself that his non-party companies, controlled solely by him, would join in suing for breach of the contract.

- *Marano Enters. of Kansas v. Z-Teca Rests.*, 254 F.3d 753, 757-758 (8th Cir. 2001) - Plaintiff was bound by the forum selection clause of a contract to which he was not a party because he was the shareholder, officer, and director of the other plaintiff who was a party to the contract and because he had voluntarily sued for breach of the contract along with his company.

- *Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp. 2d 1077, 1082, n.6 (C.D. Cal. 2004) - Three defendants were bound by a forum selection clause in a suit for breach of contract and related tort claims because the three defendants were the owners and directors of the fourth defendant, who was a party to the contract.

Thus, these cases do not support the proposition that CFIT—who has not brought suit for breach of the RRA or for any claims that involve the RRA, who has not been involved in the performance of the duties under the RRA, who has not raised or been involved in any dispute concerning the RRA, and whose non-registrar members know nothing about the existence of the RRA—should be bound by the forum selection clause. There is simply no basis here for binding CFIT to the RRA's forum selection clause and doing so would only result in unfairness to CFIT's non-registrar members.

PLAINTIFF'S OPPOSITION TO VERISIGN'S MOTION TO DISMISS FOR IMPROPER VENUE    10
05-4826 (RMW) PVT

sf-2064987

1    **C.    As A Matter Of Public Policy, CFIT Should Not Be Bound By The Forum Selection Clause Because Its Member Registrars Agreed To The Clause In The Context Of VeriSign's Unfair Bargaining Power.**

2

3    As VeriSign has recognized in its motion, a forum selection clause is unenforceable when

4    its incorporation into the contract was the result of the "overweening bargaining power" of one of

5    the parties to the contract. (*See* VeriSign Venue Mot. at 13). *See also R. A. Argueta v. Banco*

6    *Mexicano, S.A.,* 87 F.3d 320, 325 (9th Cir. 1996); *Panetta,* 2005 WL 1774327 at *3. In this case,

7    the forum selection clause is unenforceable because VeriSign, a monopoly registry for the .com

8    and .net TLD domain names, requires all registrars to sign the RRA, and prevents them from

9    being a registrar at all if they refuse to do so.

10    VeriSign argues that, although the forum selection clause was in a standardized contract

11    that all registrars were required to sign, that alone does not show that the incorporation of the

12    clause was the result of "overweening bargaining power." (*See* VeriSign Venue Mot. at 14.) In

13    support of that proposition, VeriSign cites several cases holding that a forum selection clause in a

14    standardized contract was not a result of "overweening bargaining power" based on that fact

15    alone. (Id. (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593-94 (1991) and other

16    cases).)

17    Although a standardized contract alone does not demonstrate "overweening bargaining

18    power," VeriSign's assertion that "like the plaintiff in *Carnival,* CFIT's member registrars had

19    the option of simply choosing not to enter into the RRA or of not doing business with VeriSign at

20    all" is absurd. (Id.) The registrars' position related to VeriSign and the RRA is nothing like the

21    position of the purchasers of cruises from Carnival. A purchaser of cruises can choose not to

22    enter into the contract with Carnival because there are other cruise lines to choose from or they

23    can take a different vacation. Moreover, their cruise vacation is not the source of their livelihood.

24    In contrast, VeriSign has a monopoly as the sole registry for .com and .net TLD domain

25    names. As VeriSign admits, a registrar cannot choose not to enter into the RRA with VeriSign

26    because to do so would prevent the registrar from being a registrar in the .com and .net TLDs *at*

27    *all.* (*See* VeriSign Venue Mot. at 6 ("Indeed, these registrars would not be able to provide

28    domain name registration services in the .com and .net TLDs at all . . . but for being parties to the

PLAINTIFF'S OPPOSITION TO VERISIGN'S MOTION TO DISMISS FOR IMPROPER VENUE    11
05-4826 (RMW) PVT

sf-2064987

1   RRA."), 11 ("[O]nly registrars that are parties to the RRA can perform such registrations in the

2   .com and .net TLDs.").) To operate as a registrar, one must be able to register .com TLD domain

3   names for registrants. If it were unable to do so, it would have no business because the vast

4   majority of registrants want to and do register .com domain names. (*See* Declaration of Kathryn

5   A. Vaclavik ISO Pl.'s Opp'n to VeriSign's Mot. To Dismiss for Improper Venue, Ex. 1 (charts

6   showing that .com registrations number approximately 46 million, whereas other TLDs such as

7   .net, .biz, and .org number only approximately 6.7, 1.3, and 4.5 million respectively).) Thus, if a

8   registrar refused to sign the RRA, it would not be able to be a registrar at all.

9          In analogous cases, courts have refused to enforce forum selection clauses. In particular,

10  courts have refused to enforce forum selection clauses where a party would lose their

11  employment if they refused to sign the contract. *See, e.g., Dentsply Int'l, Inc. v. Benton,* 965 F.

12  Supp. 574, 579-580 (M.D. Pa. 1997) (rejecting the argument that defendant was free to choose

13  other employment instead of signing the contract and refusing to enforce the forum selection

14  clause because "the freedom to get another job does not alleviate the understandable pressure an

15  employee would feel to preserve the job he already has"); *Scott v. Guardsmark Sec.,* 874 F. Supp.

16  117, 120 (D.S.C. 1995) (refusing to enforce a forum selection clause in an employment

17  agreement because the employer had more resources at his command and wielded unequal

18  bargaining power); *Eads v. Woodmen of the World Life Ins. Soc'y,* 785 P.2d 328, 331 (Okla. App.

19  1989) (refusing to enforce the forum selection clause because the clause was the result of "unfair

20  bargaining power" where plaintiff employee averred that he was forced to sign by threat that he

21  would lose his job); *Cf. Nelson v. Master Lease Corp.,* 759 F. Supp. 1397, 1402 (D. Minn. 1991)

22  (refusing to find a forum selection clause determinative in a motion for transfer of venue because

23  the clause resulted from "disparities in bargaining power" between the plaintiff employee and the

24  defendant employer). Thus, VeriSign's monopoly power (with which it could effectively put a

25  registrar out of business if it refused to sign the RRA) is the kind of overweening bargaining

26  power that dictates that the forum selection clause in the RRA should not be enforced.

27

28

1       Given that CFIT is even one step further removed from its member registrars, who had no

2   real power in bargaining for the forum selection clause in the first place, the forum selection

3   clause should especially be unenforceable against CFIT, a non-party to the RRA.

4                                      **CONCLUSION**

5       For all of the foregoing reasons, Plaintiff CFIT respectfully requests that this Court deny

6   Defendant VeriSign's motion to dismiss on the ground of improper venue.

7

8   Dated: January 20, 2006                    JESSE W. MARKHAM, JR.
                                               WILLIAM L. STERN
9                                              JENNIFER LEE TAYLOR
                                               STUART C. PLUNKETT
10                                             MORRISON & FOERSTER LLP

11

12                                      By:    /s/Jennifer Lee Taylor
                                               Jennifer Lee Taylor
13
                                               Attorneys for Plaintiff
14                                             COALITION FOR ICANN
                                               TRANSPARENCY INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO VERISIGN'S MOTION TO DISMISS FOR IMPROPER VENUE          13
05-4826 (RMW) PVT
sf-2064987