**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRISON & FOERSTER LLP, | No. C-07-6361 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| MOMENTOUS.CA CORPORATION, | **(Docket No. 5)** |
| Defendant. | |
| _____/ | |

   Plaintiff Morrison & Foerster LLP has sued Momentous.ca Corp. for breach of contract and common counts. According to Morrison, Momentous engaged Morrison to perform legal services relating to objections that Momentous and affiliated companies had to a proposed settlement agreement between ICANN and VeriSign, but Momentous failed to pay for the representation.

   Currently pending before the Court is Momentous's motion to dismiss for lack of personal jurisdiction, insufficient service of process, and failure to state a claim. In its reply brief, Momentous conceded the service-of-process issue, thereby leaving only the issues of personal jurisdiction and failure to state a claim. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to dismiss.

## I.    FACTUAL & PROCEDURAL BACKGROUND

   The evidence submitted by the parties reflects as follows.

**United States District Court**
For the Northern District of California

1    At the time of the events at issue, Momentous was an existing client of Morrison, a law firm.

2 More specifically, attorney Jennifer Taylor "had been doing trademark work for approximately a

3 year and a half" for Momentous.  Taylor Decl. ¶ 2.

4    Momentous is a Canadian corporation, *see* Hall Decl. ¶ 2, and a "holding company for

5 various businesses that primarily register domain names."  Hall Decl. ¶ 3.  During the relevant

6 period, Momentous's president was and still is Rob Hall.  *See* Hall Decl. ¶ 1.  Jennifer Ross-Carriere

7 was, during the relevant period, Momentous's general counsel.  *See* Hall Decl. ¶ 7.

8    ICANN is a nonprofit corporation that oversees Internet domain names and IP addresses.

9 *See* http://www.icann.org/new.html (last visited on February 8, 2008).  Apparently, it had been sued

10 by VeriSign for antitrust violations, and the companies subsequently entered into a proposed

11 settlement agreement.  *See, e.g.*, Adler Decl., Ex. A.  Momentous's subsidiary Pool.com objected to

12 the proposed agreement because it believed the agreement "would provide Verisign with

13 anticompetitive advantages."  Hall Decl. ¶ 3.

14    Accordingly, on November 10, 2005, Ms. Ross-Carriere (Momentous's general counsel)

15 contacted Ms. Taylor (a Morrison attorney).  *See* Taylor Decl. ¶ 2.  According to Ms. Taylor, Ms.

16 Ross-Carriere wanted "to engage Morrison to initiate litigation and lobbying efforts in an attempt to

17 stop" the ICANN-VeriSign agreement.  Taylor Decl. ¶ 2.

18    The next day, on November 11, 2005, Ms. Taylor had a conference call with Ms. Ross-

19 Carriere and Momentous's Canadian outside counsel.  According to Ms. Taylor, during the call,

20 "Ms. Ross-Carriere requested that Morrison initiate litigation for Momentous in California against

21 ICANN and VeriSign."  Taylor Decl. ¶ 3.  Ms. Ross-Carriere also informed Ms. Taylor that

22 "Momentous was setting up a separate organization, which would be called [CFIT] to support its

23 activities against ICANN and VeriSign."  Taylor Decl. ¶ 4; *see also* Hall Decl. ¶ 4 (stating that

24 "Momentous assisted in the founding of [CFIT]"); Taylor Decl., Ex. F (e-mail) (Ms. Ross-Carriere

25 stating that "[w]e hired a new law firm today to incorporate CFIT").  CFIT was not at the time

26 formally incorporated.

27    Ms. Taylor therefore sent to Ms. Ross-Carriere an engagement letter for the proposed

28 litigation.  *See* Taylor Decl. ¶ 4.  The letter stated that it "set forth the basic terms upon which you

2

1    have engaged our firm to represent *Momentous.CA Corporation* in connection with [CFIT]." Taylor

2    Decl., Ex. A (engagement letter) (emphasis added). Ms. Taylor also sent a copy of Morrison's

3    billing policies and procedures, which states, *inter alia*, that, "[u]pon request, we will forward our

4    billing statement to a third party designated by you who is assuming payment responsibility for your

5    legal bills, such as an insurance carrier who holds your liability coverage. In the event that timely

6    payment is not received from the third party, we will look to you for payment of our legal fees and

7    costs." Taylor Decl., Ex. A (billing policies and procedures).

8         According to Ms. Taylor, during either the conference call on November 11 or a subsequent

9    call on November 14, 2005, "Ms. Ross-Carriere expressed a number of Momentous' specific

10   business, litigation, and tactical concerns about filing suit in the name of Momentous." Taylor Decl.

11   ¶ 5. Furthermore, during the November 14 call, Ms. Ross-Carriere asked Ms. Taylor to "change the

12   name of the client in the engagement agreement that [she] had sent on November 11, 2005, as well

13   as the name of the plaintiff, from Momentous to CFIT." Taylor Decl. ¶ 6. Ms. Taylor "recall[ed]

14   this as a passing request related to [Ms. Ross-Carriere's] earlier expressed concerns" and it was Ms.

15   Taylor's "understanding that Momentous still would be responsible for paying Morrison's bill."

16   Taylor Decl. ¶ 6.

17        Ms. Taylor sent a revised engagement letter to Ms. Ross-Carriere on November 14, 2005.

18   *See* Taylor Decl. ¶ 5. The revised letter stated that it "set forth the basic terms upon which you have

19   engaged our firm to represent [*CFIT*]." Taylor Decl., Ex. B (revised engagement letter) (emphasis

20   added).

21        On November 15, 2005, Ms. Ross-Carriere faxed to Ms. Taylor the signed revised

22   engagement letter. Ms. Ross-Carriere had signed the engagement letter herself and, in the space left

23   blank for "title," had written "General Counsel and Director of Policy." *See* Taylor Decl., Ex. B

24   (signed engagement letter).

25        The next day, on November 16, 2005, CFIT was formally incorporated. *See* Pl.'s RJN, Ex.

26   B. According to Momentous, CFIT is a Delaware nonprofit corporation. *See* Hall Decl. ¶ 6. It

27   "was structured as a membership corporation that would be composed of members who were

28   referred to as 'supporters.' Momentous was one of the supporters." Hall Decl. ¶ 6. The purpose of

**United States District Court**
For the Northern District of California

CFIT was to "promote the interests of its member businesses by seeking a competitive and fair market for domain name registry services."  Hall Decl. ¶ 4.  "As a membership corporation, the supporters [of CFIT] nominated the CFIT officers and directors [who] typically continued to work out of the respective supporter's offices."  Hall Decl. ¶ 7.  Ms. Ross-Carriere became the first CEO of CFIT and worked out of her office at Momentous.  *See* Hall Decl. ¶ 7.

On November 28, 2005, CFIT filed a lawsuit in this District against VeriSign and ICANN. *See* Hall Decl. ¶ 5 & Ex. A (complaint); Taylor Decl. ¶ 10; Markham Decl. ¶ 3.  Morrison represented CFIT in the litigation.  Morrison attorneys who worked on the CFIT litigation included not only Ms. Taylor but also Jesse Markham.

According to Momentous, it never agreed to pay Morrison's fees in connection with the litigation that CFIT initiated against ICANN and VeriSign.  *See* Hall Decl. ¶ 5.  Morrison disputes this.  According to Morrison, Momentous expressly agreed to pay Morrison's fees with respect to the litigation.  For example, in his declaration, Mr. Markham states that Ms. Ross-Carriere "repeatedly promised that Momentous would pay Morrison's bill, but that the funding would come through CFIT and not directly from Momentous."  Markham Decl. ¶ 8.  Ms. Taylor states the same in her declaration.  *See* Taylor Decl. ¶ 14 (also stating that Ms. Ross-Carriere told her "at different times that Momentous was wiring money to CFIT expressly to pay our invoices").  Momentous points out that the billing statements were sent to CFIT, and not itself, but, according to Morrison, it sent its first invoice to Momentous and only thereafter sent its invoices to CFIT upon the express direction of Ms. Ross-Carriere in December 2005 (*i.e.*, after CFIT had been incorporated).  *See* Taylor Decl. ¶ 8.  Morrison also notes that Momentous's subsidiary Pool.com paid Morrison's initial retainer.  *See* Taylor Decl. ¶ 8.

According to Morrison, Momentous was not only funding the CFIT litigation, *see, e.g.*, Markham Decl. ¶¶ 6, 11 & Ex. A (e-mail) (Ms. Ross-Carriere characterizing Mr. Hall as the "major funder"), but it was also directing the litigation.  *See, e.g.*, Taylor Decl. ¶ 12 (stating that Mr. Hall was instructing the Morrison attorneys on the CFIT litigation); Pfister Decl. ¶ 2 (stating that Mr. Hall (Momentous's CEO) was directing Morrison to take action in both on the litigation and with the Department of Justice").  For example, in January 2006, there was a meeting at Morrison's office

1 in San Francisco involving several Morrison attorneys, Mr. Hall, and Taryn Naidu (a Pool.com

2 employee). *See* Markham Decl. ¶ 5; Taylor Decl. ¶ 11. During the meeting, Mr. Hall disagreed

3 with how Ms. Ross-Carriere was handling the CFIT litigation. When the Morrison attorneys asked

4 whose instructions should be followed, Mr. Hall said that his instructions should be followed. *See*

5 Markham Decl. ¶ 5; Taylor Decl. ¶ 11; *see also* Markham Decl. ¶¶ 4 (stating that, in January 2006,

6 Mr. Hall was a part of a strategy discussion for the CFIT litigation against ICANN and VeriSign);

7 Markham Decl. ¶ 11 (stating that, in July 2006, a CFIT employee stated that Momentous was paying

8 the bills in the CFIT litigation and that Mr. Hall was "'obviously calling the shots'").

9      Momentous withdrew as a member of CFIT in September 2006. *See* Hall Decl. ¶ 13.

## II. <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

12      Momentous has moved to dismiss on the basis of lack of personal jurisdiction and failure to

13 state a claim.

1.   <u>Rule 12(b)(2)</u>

15      Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction.

16 *See Doe v. Unocal Corp.*, 248 F.3d 915, 921 (9th Cir. 2001). Morrison, as the plaintiff in this case,

17 has the burden of establishing that the Court has personal jurisdiction over Momentous. *See id.* at

18 922. However, "'when a district court acts on a defendant's motion to dismiss without holding an

19 evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to

20 withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would

21 support jurisdiction over the defendant.'" *Id.*; *see also AT&T v. Compagnie Bruxelles Lambert*, 94

22 F.3d 586, 588 (9th Cir. 1996) (stating that, where trial court rules on jurisdictional issue based on

23 affidavits and discovery materials without holding evidentiary hearing, plaintiff need only make

24 prima facie showing).

25      "Where not directly controverted, plaintiff's version of the facts is taken as true for the

26 purposes of a 12(b)(2) motion to dismiss. Likewise, 'conflicts between the facts contained in the

27 parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima

28 facie case for personal jurisdiction exists.'" *Id.*; *see also Schwarzenegger v. Fred Martin Motor Co.*,

United States District Court

For the Northern District of California

374 F.3d 797, 800 (9th Cir. 2004) (stating that "plaintiff cannot 'simply rest on the bare allegations of its complaint' [but that] uncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor").

    2.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).

B.   Personal Jurisdiction

Momentous argues first for dismissal based on lack of personal jurisdiction.

Where there is no applicable federal statute governing personal jurisdiction, a court applies the law of the state in which the district court sits. *See Schwarzenegger*, 374 F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 800-01.

There are two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction.

    1.   General Jurisdiction

"General jurisdiction refers to jurisdiction to adjudicate claims that do not arise from the defendant's contacts with the forum state. Thus, if a defendant is amenable to general jurisdiction in a state, the state may exercise jurisdiction over the defendant based on any claim, including claims unrelated to the defendant's contacts with the state." 16-108 Moore's Fed. Prac. -- Civ. § 108.40; *see also Synopsys, Inc. v. Ricoh Co., Ltd.*, 343 F. Supp. 2d 883, 886 (N.D. Cal. 2003) (noting the same regarding general jurisdiction).

1    For general jurisdiction to exist over a defendant, the defendant must engage in "substantial"

2  or "continuous and systematic" contacts that approximate physical presence in the forum state.  *See*

3  *Schwarzenegger*, 374 F.3d at 801; *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082,

4  1086 (9th Cir. 2000).  "This is an exacting standard, as it should be, because a finding of general

5  jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its

6  activities anywhere in the world."  *Schwarzenegger*, 374 F.3d at 801.

7    The Ninth Circuit has stated that, when a court determines whether or not there is general

8  jurisdiction over a defendant, "[f]actors to be taken into consideration are whether the defendant

9  makes sales, solicits or engages in business in the state, serves the state's markets, designates an

10  agent for service of process, holds a license, or is incorporated there."  *Bancroft*, 223 F.3d at 1086;

11  *see also Lehigh Coal & Navigation Co. v. Geko-Mayo, GMBH*, 56 F. Supp. 2d 559, 572 (E.D. Pa.

12  1999) (noting that solicitation of business aimed at forum state is considered in general jurisdiction

13  analysis in addition to factors such as "the percentage of its revenue the non-resident [defendant]

14  derived for sales within the forum, the number of sales made by the non-resident [defendant] in the

15  forum, and whether the solicitation is regularly conducted and specifically targeted at the forum

16  market").  A court, however, should "focus upon the 'economic reality' of [a defendant's] activities

17  rather than a mechanical checklist."  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir.

18  1984).

19    Finally, even if a court concludes that substantial, or continuous and systematic, contacts

20  exist, the assertion of general jurisdiction must still be reasonable.  *See Amoco Egypt Oil Co. v.

21  Leonis Navigation Co.*, Inc., 1 F.3d 848, 852-53 (9th Cir. 1993).

22    In its opposition to the motion to dismiss, Morrison does contend that the Court has general

23  jurisdiction over Momentous but it does not press the argument very hard.  According to Morrison,

24  there is general jurisdiction based on (1) Momentous's engagement of Morrison in trademark

25  matters; (2) Momentous's reselling of domain names in California through its subsidiary Pool.com;

26  and (3) Momentous's holding itself out on its website as partners with ICANN and VeriSign, both of

27  which have their principal places of business in California.  *See* Opp'n at 7.  This activity by

28  Momentous, however, can hardly be equated with physical presence in California, especially since,

7

United States District Court

For the Northern District of California

1   given the record presented, Pool.com's contacts cannot be attributed to Momentous. *See Saudi v.*

2   *Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) (" [I]t is generally the case that the

3   contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity."); *Central States,*

4   *Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th

5   Cir. 2000) ("[W]here corporate formalities are substantially observed and the parent does not

6   dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one

7   cannot be attributed to the other."); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293

8   (11th Cir. 2000) ("Where the 'subsidiary's presence in the state is primarily for the purpose of

9   carrying on its own business and the subsidiary has preserved some semblance of independence

10  from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities

11  of the subsidiary.'").  The Court therefore finds that there is no general jurisdiction over

12  Momentous.

13          Morrison argues still that "discovery would reveal additional facts indicating that

14  Momentous' contacts with California are [in fact] continuous, substantial and systematic."  Opp'n at

15  7.  But "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based

16  on bare allegations in the face of specific denials made by the defendants, [a] [c]ourt need not permit

17  even limited discovery . . . ."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)

18  (internal quotation marks omitted).  In the instant case, Momentous has provided a declaration from

19  its president Mr. Hall in which he states, *inter alia*, that Momentous is located in Canada, that all of

20  its employees are in Canada, that it has no office outside Canada, that it conducts no business in

21  California, that it has no agent for service of process in California, that it is not incorporated in

22  California, and that it holds no license in California.  *See* Hall Decl. ¶ 2.  Morrison has not contested

23  any of these statements and has not offered any evidence to suggest that Momentous has any

24  California contacts outside of its dealings with Morrison which included representation on other

25  matters.  None of these facts suggests a level of presence in California by Momentous sufficient to

26  establish general jurisdiction..  Accordingly, the Court denies the request for discovery on the issue

27  of general jurisdiction.  *See In re Dynamic Random Access Memory Antitrust Litig.*, 2005-2 Trade

28  Cases (CCH) 75,013 (N.D. Cal. Nov. 7, 2005) (denying jurisdictional discovery because "plaintiffs

**United States District Court**
For the Northern District of California

1  have made no showing that any sworn testimony by defendants is disputed, and have not pointed to

2  any facts that, if shown, would warrant the exercise of personal jurisdiction").

3        2.  <u>Specific Jurisdiction</u>

4  The Ninth Circuit has

5        established a three-prong test for analyzing a claim of specific
      personal jurisdiction:

6

7        (1)    The non-resident defendant must purposefully direct his
          activities or consummate some transaction with the forum or
          resident thereof; or perform some act by which he purposefully

8            avails himself of the privilege of conducting activities in the
          forum, thereby invoking the benefits and protections of its

9            laws;

10        (2)    the claim must be one which arises out of or relates to the
          defendant's forum-related activities; and

11

12        (3)    the exercise of jurisdiction must comport with fair play and
          substantial justice, *i.e.* it must be reasonable.

13  *Schwarzenegger*, 374 F.3d at 802.  "The plaintiff bears the burden of satisfying the first two prongs

14  of the test. . . . If the plaintiff succeeds in satisfying both of the first two prongs, the burden then

15  shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be

16  reasonable."  *Id.*

17        As a starting point, Momentous does not dispute that there would be specific jurisdiction if

18  Momentous had hired Morrison to represent Momentous, and then Momentous refused to pay

19  Morrison for the legal services provided.  The parties also agree that in the context of this case, the

20  jurisdictional question is closely intertwined with the merits.  If there are sufficient facts which, if

21  true, would establish Momentous is contractually liable to Morrison to pay for Morrison's work in

22  representing CFIT in the ICANN/VeriSign litigation, personal jurisdiction would obtain.

23  Momentous's main point of contention is that there can be no specific jurisdiction (and no liability)

24  because CFIT, and not Momentous, was Morrison's client.

25        Momentous's focus on who the "client" was is somewhat beside the point.  There is no

26  dispute that the engagement letter that was actually signed stated that CFIT was the entity being

27  represented.  *See* Taylor Decl., Ex. D (signed engagement letter) ("This is to set forth the basic terms

28  upon which you have engaged our firm to represent [CFIT].").  Morrison's point is that Momentous

*hired* Morrison to represent CFIT and *promised to pay* Morrison's fees and then failed to pay.  That CFIT may have been Morrison's "client" in the ICANN/VeriSign litigation does not preclude Momentous from being the "client" responsible for arranging and paying for that representation. *See Cullinan v. McColgan*, 87 Cal. App. 684, 698 (1927) ("The person liable to compensate an attorney for his services is the one who employs him, not necessarily the one who receives the benefit of the services.").  This characterization of the parties' relationships is supported by evidence viewed in Morrison's favor.  For example:

(1)    Regarding hiring, the engagement letter that was signed by Ms. Ross-Carriere stated at the outset: "This is to set forth the basic terms upon which you have engaged our firm to represent [*CFIT*]."  Taylor Decl., Ex. D (emphasis added).  If CFIT had been the entity hiring Morrison, then the letter would have stated:  "This is to set forth the basic terms upon which you have engaged our firm to represent *you*."

(2)    CFIT could not have hired Morrison to represent it, at least not initially and even though Morrison knew that CFIT was being formed, because CFIT did not exist at the time the engagement letter was signed.  The engagement letter was signed by Ms. Ross-Carriere on November 15, 2005.  CFIT was not formally incorporated until the next day.

(3)    Ms. Ross-Carriere signed the engagement letter, not in any capacity related to CFIT (which did not yet exist at the time) but rather as "General Counsel and Director of Policy," a title which she held with respect to Momentous only.

(4)    The engagement letter stated: "You have agreed to deposit promptly with our Firm an advance retainer in the amount of $20,000."  Taylor Decl., Ex. D.  According to Morrison, this initial retainer was paid not by CFIT but rather by Pool.com, a Momentous subsidiary. *See* Taylor Decl. ¶ 8 (stating that the retainer was paid on November 14, 2005).

(5)    Morrison attorneys have provided declarations in which they testify that Momentous not only hired Morrison but also agreed to pay Morrison's fees (albeit through CFIT). *See, e.g.*, Markham Decl. ¶ 8 (stating that Ms. Ross-Carriere "repeatedly promised that Momentous would pay Morrison's bill, but that the funding would come through CFIT and not directly from Momentous"); Taylor Decl. ¶ 14 (stating the same and also stating that Ms. Ross-

10

**United States District Court**
For the Northern District of California

1    Carriere told her "at different times that Momentous was wiring money to CFIT expressly to

2    pay our invoices").

3    (6)    Morrison attorneys also testify in their declaration that Momentous was the party directing

4    the CFIT litigation, which further supports Morrison's position that it was Momentous who

5    hired Morrison and who promised to pay Morrison's fees.

6    Taking into account the above evidence, the Court finds that Morrison has established a *prima facie*

7    showing of jurisdictional facts to withstand Momentous's motion to dismiss.

8    This is not to say that there is no evidence in support of Momentous's position. For example,

9    according to Momentous's president, Mr. Hall, Momentous never agreed to pay Morrison's fees in

10   connection with the litigation that CFIT initiated against ICANN and VeriSign. *See* Hall Decl. ¶ 5.

11   However, this evidence is contradicted by declarations from Morrison attorneys, and "[c]onflicts

12   between parties over statements contained in affidavits must be resolved in the plaintiff's favor."

13   *Schwarzenegger*, 374 F.3d at 800 (9th Cir. 2004). Momentous also points out that Morrison's

14   invoices were actually directed to CFIT, and not Momentous, but that is not necessarily inconsistent

15   with the statements in the declarations submitted by Morrison attorneys. Moreover, according to

16   Morrison, it sent its first invoice to Momentous and only thereafter sent its invoices to CFIT upon

17   the express direction of Ms. Ross-Carriere in December 2005 (*i.e.*, after CFIT had been

18   incorporated). *See* Taylor Decl. ¶ 8. Other evidence cited by Momentous (*e.g.*, an e-mail from a

19   Morrison attorney suggesting that CFIT was the hiring entity, and not Momentous, and an expert

20   retention letter prepared by Morrison expert retention letter prepared by Morrison specifying

21   "payment will be made directly by CFIT, and not Morrison & Foerster, and the obligation for

22   payment thereof will be that of CFIT"), while supporting Momentous's position in this litigation,

23   does not negate the *prima facie* showing of jurisdiction based on the record submitted viewed in

24   Morrison's favor.

25   Momentous contends still there is no jurisdiction as a matter of law on two grounds: (1)

26   because the engagement letter was ambiguous as to who was the hiring entity and who was the

27   entity that would pay Morrison's fees, and attorney fee agreements are strictly construed against the

28   attorney; and (2) even if Momentous hired Morrison and promised to pay Morrison's fees,

1  "Morrison did not obtain the consent of CFIT as required by [California Rule of Professional

2  Conduct] 3-310(F)."  Reply at 10.  Neither argument is availing at this juncture.

3      As to the first argument, the Court does agree with Momentous that the engagement letter

4  was ambiguous.  The engagement letter stated at the outset that "[t]his is to set forth the basic terms

5  upon which you have engaged our firm to represent [*CFIT*]," Taylor Decl., Ex. D (emphasis added) -

6  - thus suggesting that Momentous was the hiring entity -- but, in the very next paragraph, the letter

7  provided that, "[i]n general, you have requested that we represent *you* in connection in connection

8  with your objections to the proposed ICANN/Verisign settlement agreement and related issues,"

9  Taylor Decl., Ex. D (emphasis added) -- thus suggesting that CFIT was the hiring entity.  The Court

10 further agrees with Momentous that there is a rule of construction that provides that ambiguous

11 contracts are strictly interpreted against the attorney.  *See Alderman v. Hamilton*, 205 Cal. App. 3d

12 1033, 1037 (1988); *see also Pinto v. Selley*, 22 Cal. App. 318, 326 (1913) ("[I]n construing contracts

13 between attorneys and clients concerning compensation in which there is any ambiguity as to the

14 intent of the parties, it is the rule generally accepted by courts to adopt such a construction of the

15 contract as will be most favorable to the interests of the client.").

16     However, this rule of construction is not dispositive where there is extrinsic evidence as to

17 the parties' intent that substantially weighs in favor of the attorney's interpretation.  In *Lane v.*

18 *Wilkins*, 229 Cal. App. 2d 315 (1964), for example, a state appellate court concluded that there was

19 "no basis . . . for failing to apply the rule of construction" only because "[t]here was little, if any,

20 extrinsic evidence adduced at the trial relating to alleged ambiguity in the portions of the [attorney

21 fee] agreement."  *Id.* at 323.  Similarly, in *Preston v. Herminghaus*, 211 Cal. 1 (1931), the California

22 Supreme Court acknowledged the rule of construction but then did not apply the rule because it was

23 also a "fundamental rule of interpretation that the practical construction placed upon a contract by

24 the parties is admissible to explain any ambiguity that may exist," and, if there were an ambiguity in

25 the case under consideration, it was "fully explained by the construction of the contract by the

26 parties themselves, who, by their actions, have clearly shown that in their opinion" the attorney's

27 interpretation of the contract was proper.  *Id.* at 12.

28

1       It is also notable that, in *Bennett v. Potter*, 180 Cal. 736 (1919), the California Supreme

2   Court indicated that the rule of construction pursuant to which an attorney fee agreement is strictly

3   construed against the attorney is tied to California Civil Code § 1654, which provides that, "[i]n

4   cases of uncertainty not removed by the preceding rules [of interpretation], the language of a

5   contract should be interpreted most strongly against the party who caused the uncertainty to exist."

6   Cal. Civ. Code § 1654; *see also Bennett*, 180 Cal. at 740 (noting that the contract was drawn by the

7   attorney and thus was to be interpreted most strongly against the attorney).  Case law reflects that

8   the rule contained in § 1654 is to be used only when the uncertainty cannot be remedied by other

9   rules or interpretation or "*when there is no extrinsic evidence available to aid in interpretation of the*

10  *contract*."  *Rainier Credit Co. v. Western Alliance Corp.*, 171 Cal. App. 3d 255, 263 (1985)

11  (emphasis added).

12      Moreover, the California Supreme Court also indicated in *Bennett* that, aside from § 1654,

13  the attorney fee agreement under consideration should be strictly construed against the plaintiff-

14  attorneys in the case under consideration because, as attorneys, the plaintiffs were "presumably

15  familiar with legal terms and proceedings and accustomed to the use of language appropriate to the

16  framing of contracts, while the defendant was a business man with no special knowledge of, or

17  familiarity with, these subjects."  *Bennett*, 180 Cal. at 740.  In the instant case, Momentous is a

18  business and not a law firm; however, its agent who signed the fee agreement with Morrison was an

19  attorney, a fact deserving of some consideration.

20      Finally, the Court takes note that, regardless of extrinsic evidence, the rule of construction

21  pursuant to which an attorney fee agreement is strictly construed against the attorney is not "so

22  inflexible that it may be invoked to perpetrate a palpable injustice."  *Pinto v. Seely*, 22 Cal. App.

23  318, 326 (1913).  In the instant case, arguably, it would be a palpable injustice to construe the

24  engagement letter against Morrison as a matter of law at this juncture in light of the alleged repeated

25  promises by Momentous that it would pay Morrison's bill.  *See* Markham Decl. ¶ 8; Taylor Decl. ¶

26  14.

27      As for Momentous's second argument that there should be no jurisdiction because, even if

28  Momentous hired Morrison and promised to pay Morrison's fees, Morrison did not comply with

**United States District Court**
For the Northern District of California

California Rule of Professional Conduct 3-310(F), the Court is not persuaded. Rule 3-310(F)

provides as follows:

> A member shall not accept compensation for representing a client
> from one other than the client unless:
>
> (1)    There is no interference with the member's independence of
> professional judgment or with the client-lawyer relationship;
> *and*
>
> (2)    Information relating to representation of the client is protected
> as required by Business and Professions Code section 6068,
> subdivision (e); *and*
>
> (3)    The member obtains the client's informed written consent,
> provided that no disclosure or consent is required if:
>
>         (a)    such nondisclosure is otherwise authorized by law; or
>
>         (b)    the member is rendering legal services on behalf of any
> public agency which provides legal services to other
> public agencies or the public.

Cal. R. Prof. Conduct 3-310(F) (emphasis added).

It is true that there is no evidence of any explicit informed written consent by CFIT. Also,

based on evidence submitted by Morrison, there was interference with the client-attorney

relationship by Momentous (*e.g.*, Mr. Hall instructed that his directions should be followed rather

than Ms. Ross-Carriere's). Therefore, Morrison arguably may have violated Rule 3-310(F). On the

other hand, it might be contended that the disputed letter of engagement to which CFIT and

Momentous were apparent parties functioned as the informed written consent. Given Ms. Ross-

Carriere's dual role representing both entities in this transaction, it also may be contended that the

spirit of Rule 3-310(F) was satisfied here.

In any event, even if the Rule were violated , the question here is whether that failure should

negate specific jurisdiction. Momentous has not cited any authority showing that a failure to follow

the rule has implications for jurisdiction, general or specific. Rather, jurisdiction still seems to hinge

on the Supreme Court's analysis in *Burger King*, where it

> emphasized the need for a "highly realistic" approach that recognizes
> that a "contract" is "ordinarily but an intermediate step serving to tie
> up prior business negotiations with future consequences which
> themselves are the real object of the business transaction." It is these
> factors -- prior negotiations and contemplated future consequences,

United States District Court

For the Northern District of California

1                       along with the terms of the contract and the parties' actual course of
dealing -- that must be evaluated in determining whether the defendant

2                       purposefully established minimum contacts within the forum.

3 *Burger King*, 471 U.S. at 479.  Here, if Momentous hired Morrison to conduct the CFIT litigation in

4 California, that would be enough to establish jurisdiction.[1]

5         Because Morrison has established a *prima facie* case supporting jurisdiction, and because

6 Momentous has failed to show that jurisdiction is otherwise barred as a matter of law, the Court

7 denies Momentous's motion to dismiss based on lack of personal jurisdiction.

8 C.     <u>Failure to State a Claim</u>

9         According to Momentous, dismissal of Morrison's complaint is also warranted because

10 Morrison has not adequately stated a claim for relief.  This argument fails for largely the same

11 reasons discussed above in Part II.B.2, *supra*.  That is, Morrison has a breach-of-contract claim

12 based on the engagement letter, which does not on its face negate as a matter of law Morrison's

13 contention that Momentous hired Morrison to represent CFIT and promised to pay Morrison's fees.

14 *See Cullinan*, 87 Cal. App. at 698 (1927).  Moreover, the common counts claim based on a written

15 account is maintainable for the same reason.  Finally, even if there were any defects in the

16 engagement letter, rendering the contract invalid, Morrison has adequately stated a claim for

17 quantum meruit.

18         To the extent Momentous contends that Morrison's violation of Rule 3-310(F) should bar

19 Morrison from obtaining fees on the merits, Momentous has cited no authority in support.  In fact,

20 there is some analogous authority which would lend support to Morrison's position.  Under

21 California Business & Professions Code § 6148, "[i]n any case . . . in which it is reasonably

22 foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars

23 ($1,000), the contract for services in the case shall be in writing," Cal. Bus. & Prof. Code § 6148(a),

24 but a failure to comply with the statute simply "renders the agreement voidable at the option of the

25

26

27       [1] The Court therefore does not address Morrison's request for jurisdictional discovery on the

28 alter ego and fraud issues. *See* Opp'n at 18.  The Court does not address whether Morrison should be permitted to assert alternative legal theories of alter ego and fraud in its complaint.

client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee." *Id.* § 6148(c).

The Court therefore denies Momentous's motion to dismiss for failure to state a claim.

### III.    CONCLUSION

For the foregoing reasons, Momentous's motion to dismiss is denied.

This order disposes of Docket No. 5.


IT IS SO ORDERED.


Dated:  March 5, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California